Samuel GRIGGS and Tillie Louise Griggs, husband and wife, Appellants,

v.

STATE of Oklahoma, ex rel. OKLA-HOMA DEPARTMENT OF TRANSPORTATION, Appellee.

No. 60656.

Supreme Court of Oklahoma.

July 2, 1985.

Paul E. Blevins, Pryor, for appellants.

Norman N. Hill, Oklahoma City, for appellee.

OPALA, Justice.

The issue for decision is whether this court's pronouncement in *Vanderpool v. State of Oklahoma, ex rel. Oklahoma Historical Society*[1] should be modified to make it applicable to all cases that were

1. Okl., 672 P.2d 1153 [1983].

pending on appeal at the time *Vanderpool* was handed down. *Vanderpool*, which abrogated the judicially-evolved doctrine of governmental immunity, applies retrospectively *only* to the plaintiff in that case and prospectively *only* to claims arising after 12:01 a.m., October 1, 1985. We answer in the negative and affirm the trial court's judgment.

This litigation was occasioned by a collision of two automobiles on March 10, 1981. State transportation employees were repairing the highway near Salina, Oklahoma, and had stationed a flagman to divert traffic around the repairs. A vehicle directed by the flagman into the other lane struck the car in which appellant, Tillie Griggs, was riding. Tillie and her husband [collectively called Griggs] sought recovery for bodily injury and loss of consortium, respectively. The Oklahoma Department of Transportation [State] demurred to the petition, invoking the doctrine of sovereign immunity. The trial court rendered judgment on the demurrer,[2] and Griggs bring this appeal.

In *Vanderpool*, promulgated by us while this appeal was pending, judicial recognition came to be withdrawn from the doctrine of governmental immunity.[3] Recognizing that the immediate impact of our

decision in *Vanderpool* would be severe, we urged the legislature to declare by statute to what extent governmental immunity should be reintroduced into our law. To provide sufficient time for the legislature to study the subject and act on it, our pronouncement was given prospective effect.[4]

The legislature responded to *Vanderpool* by passing the Governmental Tort Claims Act, to be effective October 1, 1985 at 12:01 a.m.[5]

Griggs now urge two propositions: (1) the doctrine of governmental immunity is unconstitutional because it denies the appellant both due process and access to the courts, and (2) persons with claims pending when *Vanderpool* was decided should be allowed to proceed because the change was one of substantive law, and because any other result is inequitable and unjust.

I

THE CONSTITUTIONALITY OF THE GOVERNMENTAL IMMUNITY DOCTRINE

■ Griggs contend that governmental immunity violates their right of access to the courts, Art. 2 § 6, Okla. Const.[6] Appli-

2. The trial court based its decision on two grounds: (1) the doctrine of governmental immunity protects the State from suit because the Transportation Department was performing its governmental function of maintaining the highways when the alleged negligence occurred, and (2) the legislative enactment, S.J.Res. 23 [1983], which allowed Griggs to maintain their action was a special act invalid under Art. 5 § 59, Okla.Const. The latter ground is not involved in this appeal.

3. In *Vanderpool v. State of Oklahoma, ex rel. Oklahoma Historical Society, supra* note 1 at 1156–1157 we said:
"* * * We hold that the governmental-proprietary-function inquiry shall no longer be determinative in assessing liability for tort as to all levels of government in this State.
  *   *   *   *   *   *
A STATE OR LOCAL GOVERNMENTAL ENTITY IS LIABLE FOR MONEY DAMAGES FOR INJURY OR LOSS OF PROPERTY, OR PERSONAL INJURY OR DEATH CAUSED BY THE NEGLIGENT OR WRONGFUL ACT OR OMISSION OF ANY GOVERNMENTAL ENTITY OR

ANY EMPLOYEE OR AGENT OF THE GOVERNMENTAL ENTITY WHILE ACTING WITHIN THE SCOPE OF THE GOVERNMENTAL ENTITY'S OFFICE, AND PURPOSE FOR WHICH IT IS CREATED, UNDER CIRCUMSTANCES WHERE THE ENTITY, IF A PRIVATE PERSON, WOULD BE LIABLE TO THE CLAIMANT IN ACCORDANCE WITH THE LAW OF THE PLACE WHERE THE ACT OR OMISSION OCCURRED. * * *" .

4. *Vanderpool v. State of Oklahoma, ex rel. Oklahoma Historical Society, supra* note 1 at 1156 and 1157.

5. Okla.Sess.L. 1984, c. 226 § 1. The Governmental Tort Claims Act, 51 O.S.Supp. 1984 § 151 et seq., reestablished governmental immunity in tort actions. Section 155.1 extends, until 1990, the Oklahoma Department of Transportation's tort immunity.

6. The terms of Art. 2 § 6, Okla. Const., provide:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy

cation of this provision to the doctrine was considered in *Neal v. Donahue*,[7] where we reaffirmed our previous holdings.[8] There, we held that the doctrine of sovereign immunity does not violate the state constitution. In today's pronouncement we reaffirm our commitment to that view.

■ Griggs also assert that governmental immunity violates the Due Process Clauses in the United States and Oklahoma Constitutions. The two clauses are almost identical in language.[9] In *Donahue*, we addressed this issue and found that sovereign immunity does not offend the Due Process Clauses.[10] Our view is bolstered by the Federal Supreme Court's repeated upholding of the doctrine against Due Process challenges.[11]

We reaffirm today our previous holdings that sovereign or governmental immunity violates neither Art. 2 §§ 6 and 7, Okla. Const., nor the Fourteenth Amendment to the United States Constitution.

## II

### TREATMENT OF SAME-ISSUE CASES AWAITING APPELLATE DECISION WHEN *VANDERPOOL* WAS PRONOUNCED

Griggs next contend that our decision in *Vanderpool*—pronouncing that the end of judicial recognition of governmental immunity was extended retroactively only to benefit the plaintiff in that case and pro-

---

afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

7. Okl., 611 P.2d 1125 [1980].

8. We gave our earliest consideration to the constitutionality of governmental immunity under Art. 2 § 6, Okla. Const., in *Hazlett v. Board of County Commissioners*, 168 Okl. 290, 32 P.2d 940 [1934]. There, the appellant sought to recover damages for bodily injuries from the Board of Commissioners of Muskogee County for their employee's negligence. We held that Art. 2 § 6, Okla. Const., did not give a cause of action *ex delicto* against a county, or by extension, against the state.
In *Board of County Commissioners of Tulsa County v. Guaranty Loan & Invest. Corp. of Tulsa*, Okl., 497 P.2d 423 [1972], we relied on *Hazlett, supra*, in holding that the county was not liable for damages resulting from failure properly to maintain the index of mortgages. There we said that Art. 2 § 6, Okla. Const., does not grant access to the courts where immunity has not been waived by statute.

9. The Fourteenth Amendment, § 1, U.S. Const., provides in pertinent part:
"... nor shall any State deprive any person of life, liberty or property, without due process of law; ..."
Art. 2 § 7, Okla. Const., provides:
"No person shall be deprived of life, liberty, or property, without due process of law."

10. See footnote 7 *supra* at 1129. In *Donahue* we held Central State Griffin Memorial Hospital immune from suit as a state institution performing a governmental function. There, we also ruled that the doctrine of sovereign immunity did not violate either the Equal Protection or

the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. For similar pronouncements in sister state cases, *see Krause v. State of Ohio*, 31 Ohio St.2d 132, 285 N.E.2d 736 [1972] and *O'Dell v. School Dist. of Independence*, 521 S.W.2d 403 [Mo.1975]. Although *O'Dell* was overruled by *Jones v. State Highway Comm'n*, 557 S.W.2d 225 [Mo.1977], its treatment of the constitutionality of sovereign immunity doctrine was not disturbed.

11. In *Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 [1979], the Court noted: " * * * when state law creates a cause of action, the state is free to define the defenses to that claim, including the defenses of immunity...." In *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 [1984], the Court reconsidered and upheld sovereign immunity in the context of the Eleventh Amendment. Quoting with approval from *Ex Parte State of New York No. 1*, 256 U.S. 490, 497, 41. S.Ct. 588, 589, 65 L.Ed. 1057 [1921], the Court said: "That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that *the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given* ..." [italics by the Court]. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 [1976], the Court declined to grant relief to a plaintiff who alleged that the state's immunity from suit for tort damages violated the Due Process Clause, noting that the Clause does not *ex proprio vigore* extend to a person a right to be free of injury wherever the state may be characterized as the tortfeasor.

spectively only to claims arising after the stated deadline—is unjust and inequitable. They also assert that *Vanderpool* should be accorded unrestricted retroactivity because the change was one of substantive law.

■ We recognize that *Vanderpool* did indeed alter the course of our substantive law. Up until that decision, we had consistently adhered to the immunity doctrine.[12] Griggs urge that because the change was of a substantive nature their case should be governed by *Finefrock v. Rice*.[13] There, an overruling case was applied to a pending appeal because the overruled case was held to have ceased as a norm of substantive law for both future actions and all pending, but undecided, appeals. But *Finefrock* does not decide the question here. It stands for the general common-law norm that an overruling precedent is to be applied retroactively.[14] The law clearly admits of an exception to this general rule when overruling precedent is *declared* to be nonretroactive.

■ Retroactive operation of an overruling decision is neither required· nor prohibited by the United States Constitution. Ju-

dicial policy determines whether, and to what extent, a new rule will operate retroactively.[15]

■ In *Chevron Oil Co. v. Huson*,[16] the United States Supreme Court isolated three factors for ascertaining when retroactivity of a new pronouncement should be restricted: (1) at the threshold, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or on an issue of first impression whose decision is not clearly foreshadowed; (2) the court must weigh the merits and demerits of applying the rule retroactively by considering the rule's prior history, its purpose and effect, and whether retroactivity will further or retard its operation; and (3) the court must consider the inequity flowing from retroactive application, including unfairness and hardship to the parties.

■ In light of the three *Chevron* factors, we find no infirmity in *Vanderpool's* refusal to confer the benefit of its new rule upon cases pending on appeal at the time it was decided.

The doctrine of governmental immunity protects public funds from tort claims by

---

**12.** As recently as 1983, we upheld our long line of cases in support of the doctrine of governmental immunity. In *Ruble v. Department of Transportation*, Okl., 660 P.2d 1049 [1983], we upheld a judgment on demurrer on the theory that maintenance of the state highway system is a governmental function, and that sovereign immunity attached. There, we noted with approval our position in *Spaulding v. State, ex rel. Department of Transportation*, Okl., 618 P.2d 397 [1980], that if sovereign immunity was to be abrogated, it should be done by the legislature and not the courts.

**13.** Okl., 426 P.2d 675 [1967].

**14.** *See* Annot., 10 A.L.R.3d 1371, 1382–1391 for a discussion of the general rule of retroactivity and circumstances authorizing its denial.

**15.** In *Great Northern Railway v. Sunburst Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 [1932], a noncriminal case involving no question of constitutional law, the U.S. Supreme Court held that a state may choose for itself between the principle of relation back and forward operation of its precedents. In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14

L.Ed.2d 601 [1965], the Court considered application of new constitutional norms and found that the federal constitution neither requires nor prohibits new precedential rules be given retroactive effect. The Court has consistently followed this pronouncement.

**16.** 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 [1971]. This is the leading pronouncement on standards to be considered in withholding retroactivity when addressing new noncriminal, nonconstitutional questions. We employ the *Chevron* test here because it best fits the questions presented. In doing so, we leave undisturbed our previously-employed standards in *Thompson v. Presbyterian Hosp.*, Okl., 652 P.2d 260, 268 [1982]. There we used the tripartite test from *Linkletter v. Walker, supra* note 15, which consists of three factors: (1) the purpose of the new rule, (2) the extent of reliance placed on the old doctrine, and (3) the burden placed on the administration of legal process by the increased volume of retrials. *Thompson* is to be followed in determining whether new *constitutional* rules should be applied retroactively. The test we adopt today should be applied to new *nonconstitutional, noncriminal* rule changes.

private persons. *Vanderpool* abrogated *only* the judge-made source of that doctrine. It left unaffected the power of the legislature to regulate the entire field of governmental tort liability.

The hardship the State would suffer from making *Vanderpool* immediately effective is apparent. Unlike private parties who have long been alerted to the need for insuring themselves against potential liability, the State, relying on clear precedent, had every reason to expect continued protection from suit. The State had to be afforded the opportunity to prepare itself for assuming the newly-imposed liability.

The hardship to Griggs consists of the arguable unfairness in treating them differently from the plaintiff in *Vanderpool.* The latter received the benefit of the abrogation norm. The law generally favors encouraging litigants to go forward with appeals which may lead to salutary changes in jurisprudence.[17] Applying the new rule to the case in which it is pronounced fosters this policy. This does not necessitate that the benefit of the new rule be extended to all other cases in the appellate process, especially so when hardship factors strongly militate against including others.

It is arguably unfair to deny retroactivity to Griggs as persons similarly situated to the appellant in *Vanderpool.* The quest for fairness to similarly-situated appellants has received attention in recent years within the context of the United States Supreme Court's criminal constitutional jurisprudence. There it is argued that any new constitutional decision, except one that constitutes a "clear break with the past", must be applied to all cases pending on direct appeal at the time the new rule is handed down.[18] In the criminal context, the hardship to convicted defendants facing loss of liberty is a significant consideration. In

---

**17.** This technique has been used in a number of cases in which the doctrine of sovereign immunity was abrogated in our sister states. *See, e.g., Jones v. State Highway Comm'n,* 557 S.W.2d 225 [Mo.1977]; *Davies v. City of Bath,* 364 A.2d 1269 [Me.1976]; *Dawson v. Olson,* 94 Idaho 636, 496 P.2d 97 [1972]; *Holytz v. City of Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 [1962]; *Molitor v. Kaneland Community Dist.,* 18 Ill.2d 11, 163 N.E.2d 89 [1959], cert. denied 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 [1960]. The same approach was urged in Note: The Role of the Courts Abolishing Governmental Immunity, 1964 Duke L.J. 888 [1964].

We also employed this approach in *Snethen v. Oklahoma State U. of Farmers Ed. & Co-op. U.,* Okl., 664 P.2d 377, 382 [1983]. There we overruled an earlier precedent and said:

"Neither fairness nor any principle of public policy dictates that we give a purely prospective application to the change effected by today's decision. The insured should be allowed to reap the benefit of his successful challenge to the insurable interest test we now reject by this opinion. Our pronouncement today shall hence be given effect to this case and, prospectively, to all insurance losses occurring after mandate herein is issued."

**18.** *United States v. Johnson,* 457 U.S. 537, 549, 102 S.Ct. 2579, 2586, 73 L.Ed.2d 202 [1982], a 5–4 decision, later applied in *Shea v. Louisiana,* — U.S. —, 105 S.Ct. 1065, 84 L.Ed.2d 38 [1985], a 5–4 decision. *Johnson* is based on Justice Harlan's dissenting views in *Desist v. United States,* 394 U.S. 244, 256, 89 S.Ct. 1030,

1037, 22 L.Ed.2d 248 [1969]. These cases, with Beytagh, Ten Years of Non-Retroactivity: A Critique and a Proposal, 61 Va.L.Rev. 1557 [1975], give an excellent discussion of both sides of the fairness debate.

Briefly, in *Johnson,* the Court re-examined the development of nonretroactivity of newly-declared constitutional rules of criminal procedure in relation to cases pending on appeal when the rule is established. It noted Justice Harlan's three concerns: (1) the retroactivity doctrine conflicted with the norm of principled decision-making, (2) the Court's giving of retroactive application of a new constitutional rule only to the deciding case, but not to other pending cases, is an indefensible departure from the model of principled judicial review, and (3) the selective application of new rules treated similarly-situated appellants dissimilarly. These concerns were used by the majority to "rethink retroactivity". The dissenting justices in *Johnson,* at 102 S.Ct. 2595 (White, J., dissenting), asserted that the factors in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 [1967], had governed this question consistently, and should be retained. They noted that retroactivity/prospectivity decisions call necessarily for arbitrary line drawing that results in the appearance of inequality.

In *State v. Glass,* 596 P.2d 10, 13 [Alaska 1979], the Alaska Supreme Court applied a new state constitutional rule retroactively to three simultaneously-considered cases, and prospectively to activities occurring after the decision date. In explaining its decision, the court said:

the present case, we do not believe that the fairness arguments outweigh the policy reasons that allowed only the *Vanderpool* plaintiff to benefit from the change of the law, and which make any other result manifestly unfair to the State.[19] Moreover, even the recent criminal cases recognize an exception for pronouncements—like *Vanderpool*—which spell out a clear break with the past.

An added consideration here must be afforded to the legislature's reliance on our decision in *Vanderpool.* The effective date of the enacted restoration of governmental immunity was made to coincide with the effective date of *Vanderpool.* Had the act become effective sooner—i.e., either immediately or ninety days after the end of the 1984 legislative session, as the Oklahoma Constitution generally provides [20]—it would have still precluded any redress to Griggs with respect to their claims in litigation here.[21]

The trial court's judgment is affirmed.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs by reason of stare decisis.

"Any further line we draw will inevitably be somewhat arbitrary. When the law changes, some get the benefit of the change, others do not. When only the named defendant is covered by the new rule, other defendants whose appeals raised the same issue may feel it was simply the vagaries of the court calendar that prevented their case from being the landmark decision. If all cases on direct review receive the benefit, those on collateral review do not. If the court attempts to increase equity between defendants by increasing the coverage of the new rule, it increases the unfairness to society and law enforcement officials who in good faith relied on the law as it was when they acted."

**19.** Our decision today is consistent with our previous pronouncements regarding claims pending when *Vanderpool* was decided. In *McGaha v. Board of Regents of the University of Oklahoma,* Okl., 691 P.2d 895 [1984] and *Williams v. State,* Okl., 678 P.2d 259 [1984], we denied the benefits of *Vanderpool* to cases pending on the date of its pronouncement.

**20.** Art. 5 § 58, Okla.Const., provides in pertinent part:

"No act shall take effect until ninety days after the adjournment of the session at which it was passed...." (unless it bears an emergency clause).

The Governmental Tort Claims Act was passed in the second session of the 39th Legislature, which adjourned sine die on May 31, 1984. Under Art. 5 § 58, Okla. Const., this act would have been effective ninety days after adjournment. Although the Act did become law on that date, its operation—in accordance with the rule in *Caywood v. Caywood,* Okl., 541 P.2d 188 [1975], which also involved an act with a specified future effective date—was suspended to the date specified by the legislature, which here is October 1, 1985 at 12:01 a.m.

**21.** *Thorpe v. Housing Auth. of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 [1969]. *Thorpe,* along with *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 [1974], holds that an appellate court must apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory or legislative history to the contrary.