2012 OK CR 2

**Eric Jose BARNETT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–2009–698.**

Court of Criminal Appeals of Oklahoma.

Feb. 1, 2012.

## ORDER GRANTING PETITION FOR REHEARING

¶ 1 Eric Jose Barnett, Appellant, was tried by jury and found guilty of second degree felony murder, in violation of 21 O.S.2001, § 701.8(2), in the District Court of Okmulgee County, Case No. CF–2009–2. The jury sentenced Appellant to twenty-three (23) years imprisonment. Appellant filed a timely appeal in this Court, and on November 1, 2011, this Court affirmed the conviction and sentence. *Barnett v. State*, 2011 OK CR 28, 263 P.3d 959. Appellant now petitions for rehearing. A petition for rehearing shall only be filed for the following reasons:

(1) Some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) The decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

Rule 3.14, *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S. Ch. 18, App. (2012). Rehearing is **GRANTED**, but relief is **DENIED**.

¶ 2 Appellant's first ground for rehearing argues that the Court's decision to overrule *Quillen v. State*, 2007 OK CR 22, 163 P.3d 587 and affirm his conviction for second degree murder violates the ex *post facto* principles against retroactive judicial decisions embodied in the Due Process Clause. U.S. Const. Amend. XIV. *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). We reject this contention for several reasons. First, we address Appellant's underlying premise that our continued adherence to the merger doctrine inevitably would have resulted in a reversal or modification of his murder conviction on direct appeal. Here Appellant's argument disregards the significance of his waiver of the issue when he failed to object at trial to the lesser included offense instruction on second degree felony murder. *Grissom v. State*, 2011 OK CR 3, ¶ 28, 253 P.3d 969, 980. Our review of his merger doctrine argument on direct appeal was limited to whether the district court committed plain error, which is error that goes to the foundation of the case or takes from the defendant a right essential to his defense. *Grissom*, 2011 OK CR 3, ¶ 28, 253 P.3d at 980 (*citing Simpson v. State*, 1994 OK CR 40, ¶ 12, 876 P.2d 690, 695).

¶ 3 Plain error provides a very limited avenue of appellate review. The decision to correct an error that has been forfeited by the failure to object at trial lies within the "sound discretion" of the appeals court, to be exercised only where "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Simpson*, 1994 OK CR 40, ¶ 30, 876 P.2d at 700–701, (*citing United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 (1993)). We agreed with Appellant on direct appeal "that the predicate felony of using a vehicle to facilitate the intentional discharge of a firearm is not independent from the homicidal act of shooting Vernon Sutton, and that his conviction therefore violates the merger doctrine set forth in *Quillen*." *Barnett*, 2011 OK CR 28, ¶ 15, 263 P.3d at 964. However, Appellant reads more into this statement than he should when he assumes that a finding of error would have dictated reversal or modification of his murder conviction to the underlying felony, as the Court had done four years earlier in *Quillen*.

¶ 4 Under the plain error doctrine, relief would be required only if the merger doctrine violation seriously affected the fairness, integrity or public reputation of the proceedings resulting in his conviction. As we indicated in the direct appeal, this Court's application of the merger doctrine to reverse Appellant's conviction for murder and convict him only of the underlying felony would be a miscarriage of justice. Appellant killed a human being while in the commission of a felonious drive-by shooting, and was clearly guilty of second degree felony murder, at the very least. 21 O.S.2001, § 701.8(2). Although the jury acquitted him of malice aforethought murder, it need not have done so, as evidence of malice aforethought was abundant. Thus, notwithstanding his claim of error under the merger

doctrine, Appellant clearly benefited from the trial court's decision to instruct on the lesser included offense of second degree felony murder, giving the jury a means to express sympathy for his position and spare this young man the heavy penalty of life imprisonment.

¶ 5 This Court could have readily affirmed Appellant's second degree murder conviction solely on the presumption that he desired the second degree felony murder instructions as a strategic benefit and waived any objection based on the merger doctrine. *Shrum v. State*, 1999 OK CR 41, ¶ 11, 991 P.2d 1032, 1037 (finding that if "the trial court proposes or the State requests the lesser included offense instruction and the defense does not object, we will presume the defendant desired the lesser included offense instruction as a benefit"). We did not reach this issue in affirming the conviction, because our decision to abandon the merger doctrine foreclosed analysis of questions arising from a finding of error. Appellant's supposition that our abandonment of the merger doctrine deprived him of an otherwise inevitable reversal or modification of his murder conviction misunderstands the nature of our holding on direct appeal. We now clarify our view that Appellant's murder conviction, which is authorized by the plain language of the second degree murder statute and supported by overwhelming evidence, is free from error that seriously affects the fairness, integrity or public reputation of judicial proceedings.

■ ¶ 6 Second, we reject the argument that retroactive application of our decision in *Barnett* violates ex *post facto* principles embodied in the Due Process Clause. "Nothing in the Constitution alters the fundamental rule of 'retrospective operation' that has governed '[j]udicial decisions ... for near a thousand years.'" *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 94, 113 S.Ct. 2510, 2516, 125 L.Ed.2d 74 (1993) (*quoting Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting)). "Retroactive operation of an overruling decision is neither required nor prohibited by the United States Constitution." *Griggs v. State ex rel. Dept. of Transp.*, 1985 OK 51, ¶ 11, 702 P.2d 1017, 1020. Our decision to overrule *Quillen* and apply that ruling in the case before us was fully consonant with the general "common-law norm that an overruling precedent is to be applied retroactively," *Griggs*, 1985 OK 51, ¶ 10, 702 P.2d at 1020, to the parties before the Court and to other appeals then pending on direct review and not yet final. *Harper*, 509 U.S. at 97, 113 S.Ct. at 2517 (holding that when Supreme Court applies a rule of federal law to parties before it, that rule is controlling and retroactive on direct review, regardless whether events predate or postdate announcement of the rule).

■ ¶ 7 The Supreme Court has identified limited circumstances where the retroactive application of a judicial decision can violate due process in the same way as an ex *post facto* law.[1] *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The Court has not incorporated the specific prohibitions of the Ex Post Facto Clause "jot-for-jot" when applying the Due Process Clause to retroactive judicial decision-making, but rather has recognized "the more basic and general principle of fair warning" that the Supreme Court articulated in *Bouie*. *Rogers v. Tennessee*, 532 U.S. 451, 459, 121 S.Ct. 1693, 1699, 149 L.Ed.2d 697 (2001). We analyze Appellant's constitutional argument according to *Bouie's* controlling principle of fair warning.

¶ 8 In *Bouie*, the petitioners were convicted under a state criminal statute which defined trespass as entry after notice from the

---

1. The Ex Post Facto Clause in Article I, section 10 of the United States Constitution "is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) (*citing Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798)). An ex post facto law has been most famously defined by Justice Chase as one that (1) makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) aggravates a crime, or makes it greater than it was, when committed; (3) changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed; (4) alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. *Calder*, 3 Dall. at 390.

owner that entry was prohibited. Prior state case law had uniformly held that a conviction under the statute required proof that notice was given to the would-be trespasser before entry. *Id.,* 378 U.S. at 349 n. 1, 84 S.Ct. at 1700 n. 1. On appeal, the South Carolina Supreme Court enlarged the statute by construction to include the case where a person refused to leave premises after receiving notice, and upheld petitioner's convictions. *Id.,* 378 U.S. at 349–50, 357, 84 S.Ct.at 1697, 1700–01.

¶ 9 The Supreme Court in *Bouie* held the state supreme court's retroactive application of its decision to affirm petitioners' trespass convictions violated due process. The Court grounded its decision in the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." *Id.,* 378 U.S. at 350, 84 S.Ct. at 1701.

> [A]n *unforeseeable judicial enlargement* of a criminal statute, applied retroactively, operates precisely like an ex post facto law ... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction ... *If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect.*

*Bouie,* 378 U.S. at 353–354, 84 S.Ct. at 1702–03 (internal quotations and citations omitted) (emphasis added).

¶ 10 In *Rogers v. Tennessee,* the Supreme Court held that the state supreme court's decision to abandon the common law "year and a day" rule in upholding the appellant's second degree murder conviction did not violate *Bouie*'s principle of due process. *Id.,* 532 U.S. at 466–67, 121 S.Ct. at 1703. The Supreme Court in *Rogers* reasoned that the state court's decision was neither unexpected nor indefensible under *Bouie.* The Court reasoned that the "year and a day" rule was "widely viewed as an outdated relic of the common law" at the time of the crime, *id.,* 532 U.S. at 462, 121 S.Ct. at 1701–02; the rule had "only the most tenuous foothold" in

state common law and no statutory basis in state criminal law, *id.,* 532 U.S. at 464, 121 S.Ct. at 1701; and though the rule persisted in theory under the state's common law, it had never actually been applied in a reported case. *Id.* Affirming the state supreme court's decision to abolish the "year and a day" rule and uphold the appellant's conviction, the Supreme Court concluded:

> There is, in short, nothing to indicate that the Tennessee court's abolition of the rule in petitioner's case represented an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect. Far from a marked and unpredictable departure from prior precedent, the court's decision was a routine exercise of common law decision·making in which the court brought the law into conformity with reason and common sense. It did so by laying to rest an archaic and outdated rule that had never been relied upon as a ground of decision in any reported Tennessee case.

*Rogers,* 532 U.S. at 466–67, 121 S.Ct. at 1703.

¶ 11 In *Evans v. Ray,* 390 F.3d 1247 (10th Cir.2004), the Tenth Circuit Court of Appeals applied *Rogers v. Tennessee* to determine whether this Court's application of its 1999 decision in *Fairchild v. State,* 1999 OK CR 49, 992 P.2d 350, to uphold a conviction for a child abuse murder committed in 1996, violated this ex post facto principle of due process. *Evans,* 390 F.3d at 1252. The Court of Appeals found that because the language of the child abuse murder statute was imprecise, and our decisions at the time of the crime on the required mens rea element for child abuse murder were in conflict, this Court's opinion resolving the conflict in *Fairchild* in 1999 was "not unexpected and indefensible" but, rather, was "eminently predictable." *Evans,* 390 F.3d at 1252–54.

¶ 12 The Court of Appeals also held that this Court's decision to reconcile that conflict by adopting one line of authority and abandoning another was "certainly *defensible in light of the statutory language* " of the child abuse murder statute, "and Oklahoma's long history of interpreting the statutory requirement of 'willful' as a general intent requirement rather than as a specific intent require-

ment." *Id.* (emphasis added). The Court of Appeals therefore rejected the argument that retroactive application of *Fairchild* violated due process. *Id.* We subsequently applied the *Evans* analysis and reached the same conclusion in *Warner v. State*, 2006 OK CR 40, ¶ 80, 144 P.3d 838, 871.

■ ¶ 13 The Court in *Barnett* abandoned a 115 year-old, judge-made doctrine grounded in policy concerns about the harshness of the felony murder rule under a capital murder statute that was repealed in 1973. *Barnett*, 2011 OK CR 28, ¶¶ 24–31, 263 P.3d at 967–970. The Due Process Clause prohibits application of this holding to Appellant only if it is "'unexpected and indefensible' by reference to prior Oklahoma law." *Evans*, 390 F.3d at 1253. The following reasons support our view that the decision in *Barnett* was reasonably expected and defensible by reference to Oklahoma law as it existed in 2008, when Appellant killed his victim.

¶ 14 First, *Barnett*'s abandonment of the merger doctrine was not an "unforeseeable judicial enlargement" of the second degree felony murder statute to criminalize conduct that was innocent when it was committed. *Bouie*, supra. Felony murder has always been a crime in Oklahoma. Since 1976, the Oklahoma Statutes have defined homicide as second degree murder "[w]hen perpetrated by a person engaged in the commission of any felony" other than the crimes enumerated in the first degree murder statute. 21 O.S.2001, § 701.8(2). Appellant concedes that his conduct violated the felony drive-by shooting statute, but "overlooks the plain language" of section 701.8(2), *see Baker v.*

*State*, 1998 OK CR 46, ¶ 2, 966 P.2d 797, 798, and reasons that because of the merger doctrine, his killing in the commission of this felony "was not second degree murder." This astonishing legal statement well captures the principal, illogical vice of the merger doctrine: it arrogated to this Court an extralegal power to void a conviction for second degree felony murder that was authorized by statute, supported by sufficient evidence, and otherwise free from error.[2]

¶ 15 Second, *Barnett*'s holding is certainly defensible "in light of the statutory language" of the second degree murder statute, because the Court's opinion resolves to enforce that language as written. *Evans*, 390 F.3d at 1254. The plain language of the drive-by shooting statute, 21 O.S.Supp.2007, § 652(B), and the second degree murder statute gave Appellant a clear and eminently fair warning in 2008 that his conduct was prohibited by Oklahoma law. We will not delve further into the abject fiction that Appellant somehow relied upon the merger doctrine in attempting to conform his conduct to the criminal law or in making his defense to this charge at trial. He clearly did neither.

¶ 16 Finally, the Court's decision to abandon the merger doctrine was not "unexpected" in light of prior Oklahoma law. Though the Court had reaffirmed its adherence to the merger doctrine in *Quillen* in 2007, we stated at length in *Barnett* that the merger doctrine had a longstanding, but conceptually tenuous, foothold in our jurisprudence, and no statutory basis in our modern criminal code.[3] *Cf. Rogers*, 532 U.S. at 464, 121 S.Ct.

**2.** 20 O.S.2001, § 3001.1 (providing no judgment shall be set aside by appellate court unless *error* has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right).

**3.** It is remarkable that after being first mentioned in *dicta* in *Jewell v. Territory*, 4 Okla. 53, 43 P. 1075 (Okla.1896), we can find no mention of the merger doctrine in a published Oklahoma case for sixty-five years, and then, it was again in *dicta*. *Tarter v. State*, 1961 OK CR 18, ¶¶ 40–44, 359 P.2d 596, 602. Another fifteen years passed before the Court reversed a conviction based on the merger doctrine in a published decision in *Massie v. State*, 1976 OK CR 174, 553 P.2d 186 (child beating). After *Massie*, the Court reversed

convictions for second degree felony murder based on the merger doctrine in three more published cases where convictions were clearly authorized by statute: *Tucker v. State*, 1984 OK CR 36, 675 P.2d 459 (child beating); *Sullinger v. State*, 1984 OK CR 44, 675 P.2d 472 (aggravated assault and battery); and *Quillen* (child neglect), supra. All of these cases essentially relied on the original *dicta* in *Jewell*. The Court in *Massie* cited *Jewell* and two cases that did not mention the merger doctrine. In *Tucker*, the Court cited only to its previous decision in *Massie*. *Sullinger* cited only *Jewell* and *Massie*. Thus, before *Quillen*, no reported case had considered whether the 1973 repeal of the territorial capital murder statute interpreted in *Jewell* warranted reconsideration of the merger doctrine in light of the modern second degree felony murder statute. The Court

at 1701. A bare majority had upheld the merger doctrine in *Quillen,* and the two dissenting opinions clearly foreshadowed the grounds stated by the Court for unanimously abandoning the merger doctrine four years later in *Barnett.* The narrow margin of support for the holding in *Quillen,* the palpable conflict between the historic merger doctrine and the modern homicide statutes, and the novel modification remedy employed by the Court in *Quillen,* all rendered the viability of the merger doctrine an open question after that decision.

¶ 17 Considering all these circumstances, the holding in *Barnett* was "not unexpected and indefensible in light of the plain language of the [second degree murder] statute;" but, rather, was an "eminently predictable" re-examination of the issues surrounding the merger doctrine and second degree felony murder. *Evans,* 390 F.3d at 1254. *Barnett* obviously eliminated the merger doctrine as a ground for attacking Appellant's second degree murder conviction on appeal. However, as we have shown, our review of Appellant's claim was limited to plain error, and even if we had found error, relief was not dictated either by the facts of his case or by principles of justice. The Court in *Barnett* announced and applied a change in the law, but not in any way that the Constitution forbids. The Due Process Clause does not prohibit reversals of fortune.[4] *Barnett* sought to bring our case law "into conformity with reason and common sense . . . by laying to rest an archaic and outdated rule" of territorial law and enforcing the plain language of the current second degree murder statute. *Rogers,* 532 U.S. at 467, 121 S.Ct. at 1703. Our decision to affirm Appellant's murder conviction did not deprive him of the due process of law.

¶ 18 Appellant correctly points out in his second ground for rehearing that the Court omitted a discussion of his request for instructions on the lesser included offense of first degree manslaughter. We review the district court's rulings on requested instructions for abuse of discretion. *Jones v. State,* 2009 OK CR 1, ¶ 63, 201 P.3d 869, 886. The district court has a duty to instruct on lesser included or lesser related offenses which are supported by the evidence. *Glossip v. State,* 2001 OK CR 21, ¶ 28, 29 P.3d 597, 603–604. The proper test for instructions on a lesser included offense is whether *prima facie* evidence of the lesser offense has been presented, *id.,* 2001 OK CR 21, ¶ 29, 29 P.3d at 604. Sufficient evidence to warrant a lesser included offense is evidence which would allow a jury rationally to find the accused guilty of the lesser offense and acquit him of the greater. *Eizember v. State,* 2007 OK CR 29, ¶ 111, 164 P.3d 208, 236.

¶ 19 Homicide is manslaughter in the first degree when "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." 21 O.S.2001, § 711(2). The elements of heat of passion are: (1) adequate provocation; (2) a passion or emotion such as fear, terror, anger, rage, or resentment; (3) the homicide

considered the matter in greater depth in *Barnett* and found the merger doctrine undesirable and unnecessary in light of the modern homicide statutes.

4. *See also, State v. Lovato,* 150 N.M. 39, 256 P.3d 982, 986 (App.2011) (retroactive application of state supreme court decision incorporating definition of aiding and abetting did not violate due process where plain language of relevant statutes provided fair warning that conduct was criminal when it was committed); *Barson v. Commonwealth,* 58 Va.App. 451, 711 S.E.2d 220, 226–27 (2011) (overruling prior case law *ad hoc* definition of "obscene" in favor of ordinary meaning of word, and upholding conviction based on ordinary meaning, did not violate due process, be-cause conduct was criminal under statute before prior case law definition applied); *People v. Superior Court,* 48 Cal.4th 1, 104 Cal.Rptr.3d 764, 224 P.3d 86, 98–99 (2010) (overruling prior, judge-made collateral estoppel rule against inconsistent verdicts and allowing defendant's prosecution for felony murder in light of decision did not violate due process; murder had always been criminal and no doctrine required appellant to receive benefit of favorable prior case law); *Proctor v. State,* 967 S.W.2d 840, 845 (Tex.Crim. App.1998) (decision overruling previous case and holding statute of limitations could be waived applied retroactively to appellant, as it did not enlarge liability under statute, alter elements of crime, increase range of punishment, or alter substantive defenses available when crime was committed).

occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and (4) a causal connection between the provocation, passion and homicide. *Cipriano v. State*, 2001 OK CR 25, ¶ 16, 32 P.3d 869, 874 (internal citations omitted).

¶ 20 The victim's rape of Appellant's mother years before, and the menacing conduct of the victim at Appellant's home a month before the shooting, may have provoked strong feelings of fear, terror, anger, rage or resentment in Appellant toward the victim. However, on the day of the homicide, Appellant had not seen the victim in almost a month. When he learned of the victim's location from a text message, Appellant armed himself, sought out the victim (who was about three blocks away), and fired upon him repeatedly from a passing car, killing him. At trial, the prosecutor asked Appellant, "the next time you saw him was that day, and you made a decision to drive by and shoot him, didn't you?" Appellant answered, "Yes, I did." The prosecutor asked Appellant if he "knew when you were on that street, that the actions you were going to take could very well lead to the death of a human? Yes or No?" Appellant answered, "Yes."

¶ 21 Appellant admitted at trial that he disguised himself because he didn't want to get caught committing a murder; that he was only a few feet from the victim when he fired on him the first time, and got closer with each of the four shots he fired; and that he was aiming intentionally at the victim each time he pulled the trigger. "He was your target?" the prosecutor asked. "Yeah," Appellant testified. Each of the four shots struck the victim. Still, Appellant denied any intent to kill the victim, explaining at one point that "anybody can get shot with a gun and not die. Majority of people don't." Appellant admitted that in shooting the victim four times at close range, he intended to "harm" him.

¶ 22 The facts of this crime plainly show Appellant's assassination of a feared and hated adversary, rather than a killing in a heat of passion. Appellant "acted deliberately and knew exactly what he was doing;" and it seems that "[i]n this case, as they do in many others, the jury made undue allowances for the weaknesses, frailties, and imperfections of mankind" particularly Appellant's youth, the rape of his mother, and the victim's menacing conduct-when it acquitted Appellant of first degree murder and spared him the penalty of life imprisonment. *Edwards v. State*, 9 Okl.Cr. 306, 324, 131 P. 956, 963 (1913). The evidence at trial will not support the view that Appellant committed an unpremeditated homicide while in a heat of passion. Homicide is not the less murder when committed in a state of anger. 21 O.S.2001, § 704. Appellant's actions reflect a state of mind capable of deliberation, rather than an impulsive and sudden act of killing while under the reign of his passions. We find no rational jury could acquit Appellant of some degree of murder and convict him of manslaughter in a heat of passion. His requested instructions on that lesser included offense were therefore properly denied.

¶ 23 The petition for rehearing is **GRANTED**. No further relief is required.

¶ 24 **IT IS SO ORDERED.**

/s/ Arlene Johnson
ARLENE JOHNSON, Presiding Judge

/s/ David B. Lewis
DAVID B. LEWIS, Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Clancy Smith
CLANCY SMITH, Judge