2016 OK CR 27

**Chancey Allen LUNA, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Case No. F–2015–562**

Court of Criminal Appeals of Oklahoma.

FILED DECEMBER 2, 2016

APPEARANCES AT TRIAL, JAMES W. BERRY, HOWARD BERRY, P.O. BOX 21803, OKLAHOMA CITY, OK 73156, ATTORNEYS FOR DEFENDANT

JASON HICKS, DISTRICT ATTORNEY, CORTNIE SIESS, ASSISTANT DISTRICT ATTORNEY, STEPHENS COUNTY COURTHOUSE, 101 SOUTH 11TH STREET, DUNCAN, OK 73533, ATTORNEYS FOR STATE

APPEARANCES ON APPEAL, WYNDI THOMAS HOBBS, P.O. BOX 926, NORMAN, OK 73070, ATTORNEY FOR APPELLANT

E. SCOTT PRUITT, OKLAHOMA ATTORNEY GENERAL, WILLIAM R. HOLMES, ASSISTANT ATTORNEY GENERAL, 313 N.E. 21ST STREET, OKLAHOMA CITY, OK 73105, ATTORNEYS FOR APPELLEE

## OPINION

JOHNSON, JUDGE:

¶ 1 A jury convicted Appellant Chancey Allen Luna of First Degree Murder in violation of 21 O.S.Supp.2012, § 701.7(B), in the District Court of Stephens County, Case No. CF–2013–279. The jury assessed punishment at life imprisonment without the possibility of parole. The Honorable Ken J. Graham, District Judge, who presided at trial, sentenced Luna accordingly. From this Judgment and Sentence Luna appeals, raising the following issues:

(1) whether the Eighth Amendment to the United States Constitution pre-

cludes sentences of life imprisonment without the possibility of parole for juvenile offenders;

(2) whether he is entitled to a constitutionally valid sentencing hearing;

(3) whether he was deprived of his due process rights when the district court failed to give his requested instruction on Second Degree Murder;

(4) whether his counsel rendered ineffective assistance by failing to present evidence and argument relating to the imposition of a sentence of life without the possibility of parole on a juvenile offender; and

(5) whether the accumulation of errors deprived him of a fair proceeding.

¶ 2 We affirm Luna's conviction for First Degree Murder, vacate his sentence of life without the possibility of parole and remand the matter to the district court for resentencing. Because of the resolution of this case, we need not address Luna's ineffective assistance of counsel or cumulative error claims.[1]

## Background

¶ 3 Appellant Luna shot and killed Christopher Lane on August 16, 2013.[2] Luna fired the fatal shot from the backseat of a black Ford Focus driven by Michael Jones as Lane was jogging alone down a road in Duncan, Oklahoma. James Edwards, Jr., who was in the car in the front passenger seat, cooperated with the prosecution and testified against Luna in exchange for a reduced charge.[3] Edwards' testimony was corroborated by direct and circumstantial evidence.

## Constitutionality of Life Without Parole Sentence

¶ 4 Luna, who was 16 years old at the time of the murder, contends his sentence of life without the possibility of parole is unconstitutional under both the Eighth Amendment of the United States Constitution and Article 2, Section 9 of the Oklahoma Constitution.[4] He maintains that he is entitled to resentencing or sentence modification.[5]

¶ 5 The Eighth Amendment principles of law governing juvenile sentencing have evolved significantly in United States Supreme Court precedents over the past few years, specifically in *Graham v. Florida*,[6] *Miller v. Alabama*,[7] and *Montgomery v. Louisiana, supra*. We briefly discuss these decisions as a framework for our federal constitutional analysis.

¶ 6 In 2010, the Court held in *Graham* that the Eighth Amendment prohibits a juvenile offender from being sentenced to life in prison without parole for nonhomicide crimes. *Graham*, 560 U.S. at 79, 130 S.Ct. at 2032–33. The *Graham* Court was the first to apply a categorical classification under the Eighth Amendment to a so-called "term-of-years" sentence. *Id.* at 61, 130 S.Ct. at 2022. The defendant in *Graham* committed the crimes

1. Luna's claim—that the district court erred in denying his requested instruction on Second Degree Murder—is without merit. The district court did not abuse its discretion in finding insufficient evidence to warrant this instruction based on the evidence presented at trial. *See Barnett v. State*, 2012 OK CR 2, ¶ 18, 271 P.3d 80, 86.

2. Lane was a native of Melbourne, Australia attending East Central University in Ada, Oklahoma on a baseball scholarship.

3. The State amended Edwards' charge from First Degree Murder to Accessory After the Fact. Edwards testified that he had been certified as an adult for the accessory charge, but was appealing that ruling. He said that he had no agreement with the prosecution on a sentence at that time.

4. The Eighth Amendment of the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article 2, § 9 of the Oklahoma Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." These clauses prohibit the government (federal and state) from imposing unduly harsh penalties on criminal defendants as punishment for crime after conviction.

5. Luna asks leave to file a supplemental brief and notice of intervening case law, namely the United States Supreme Court's recent ruling in *Montgomery v. Louisiana*, 577 U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). Luna's application is GRANTED.

6. 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

7. 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

of armed burglary and attempted armed robbery when he was sixteen years old and he was sentenced to the maximum term on both crimes: life imprisonment for the armed burglary, and fifteen years for the attempted armed robbery. *Id.* at 57, 130 S.Ct. at 2020. Because the State of Florida had abolished its parole system, the life sentence imposed on Graham was, in effect, a mandatory life term. *Id.* The Court held that Graham's sentence violated the Eighth Amendment because it "guarantees he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager are not representative of his true character, even if he spends the next half century attempting to atone for his crimes and learn from his mistakes." *Id.* at 79, 130 S.Ct. at 2033.

¶ 7 In reaching its decision, the *Graham* Court found an emerging national consensus against mandatory imposition of life terms upon juvenile nonhomicide offenders. *Id.* at 67, 130 S.Ct. at 2026. Relying on its reasoning in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) holding the death penalty unconstitutional for murder defendants who were under 18 at the time of their capital crimes, the Court noted that juvenile offenders have a lessened moral culpability as compared to adult offenders, and they are less deserving of the most severe punishments. *Id.* at 68, 130 S.Ct. at 2026, 176 L.Ed.2d at 841. The Court further found that penological goals in retribution, deterrence or incapacitation were insufficient to justify sentences of life without parole for juvenile nonhomicide offenders. *Id.* at 71–74, 130 S.Ct. at 2028–30. Although the *Graham* Court concluded that all mandatory life sentences for juvenile nonhomicide offenders are unconstitutional, it tempered that holding explaining that

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears

emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* at 75, 130 S.Ct. at 2030.

¶ 8 Two years after *Graham*, the Court decided *Miller* and extended its *Graham* holding to juveniles convicted of homicide offenses. *Miller*, supra, 567 U.S. at ——, 132 S.Ct. at 2469. The Court in *Miller* declared unconstitutional any statutory sentencing scheme that mandated a sentence of life in prison without the possibility of parole for juvenile homicide offenders. *Id. Miller* involved the consolidated appeals of two juveniles who were fourteen years old at the time they committed their respective homicide crimes. *Id.* at ——, 132 S.Ct. at 2460. Both were tried as adults and eventually sentenced to life without parole terms. *Id.* State law in each case mandated life without parole and stripped the trial judges of any discretion to deviate from that maximum penalty. *Id.* In considering these circumstances, the *Miller* Court reaffirmed its reasoning in *Graham* concerning the diminished culpability of juvenile offenders as compared to adult offenders. *Id.* at ——, 132 S.Ct. at 2464–69. The Court explained that "none of what [Graham] said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific." *Id.* at ——, 132 S.Ct. at 2465. Much of the *Graham* reasoning is therefore applicable to any life without parole sentence imposed on a juvenile. *Id.* As the majority in *Miller* observed:

> [T]he mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. By

removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes *Graham's* (and also *Roper's*) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.

*Id.* at ——, 132 S.Ct. at 2466.

¶ 9 Unlike *Graham*, however, *Miller* placed no categorical prohibition against the imposition of life without parole sentences on juvenile homicide offenders, so long as the sentencing judge was vested with, and appropriately exercised, the discretion to consider factors such as the defendant's youth in imposing that sentence.

¶ 10 Earlier this year, the Supreme Court held in *Montgomery v. Louisiana, supra,* 136 S.Ct. at 734, that *Miller's* holding applies retroactively to juvenile offenders whose convictions and sentences were final when *Miller* was decided in 2012. Included with its retroactivity ruling, the Court further expounded upon the principles expressed in *Graham* and *Miller*. *Montgomery* involved a juvenile who murdered a deputy sheriff in 1970 when he was seventeen years old. *Id.* at ——, 136 S.Ct. at 725. At the time of Montgomery's final conviction the jury's verdict of guilt without capital punishment required the trial court to impose a sentence of life without parole. The sentence was automatic under Louisiana law and Montgomery had no opportunity to present mitigation evidence to justify a less severe sentence. *Id.* at ——, 136 S.Ct. at 725–26.

¶ 11 In holding that *Miller* applied retroactively to cases on collateral review such as Montgomery's case, the Court noted that *Miller* established, in part, a new substantive rule of law (*i.e.,* "*Miller's* conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution"). *Id.* at ——, 136 S.Ct. at 736. The Court acknowledged that the holding in *Miller* had

a procedural component as well because it required "a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at ——, 136 S.Ct. at 735. The hearing *Miller* prescribes—where "youth and its attendant characteristics" are considered as sentencing factors—is necessary to separate those juveniles who may be sentenced to life without parole from those who may not and is necessary to give effect to *Miller's* substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity. *Id. Miller,* the Court explained, was no less substantive than its earlier decisions in *Roper* and *Graham,* noting before *Miller* every juvenile convicted of a homicide offense could be sentenced to life without parole and after *Miller* it would be the "rare" juvenile offender who received that same sentence. *Id.* at ——, 136 S.Ct. at 734. The Court made clear that *Miller* did more than require a sentencer to consider a juvenile offender's youth before imposing the harshest penalty because sentencing a child to life without parole is disproportionate for the vast majority of juvenile offenders and is reserved for that rare juvenile offender whose crime reflects irreparable corruption. *Id.* at ——, 136 S.Ct. at 734. The Court stressed that *Miller* "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." *Id.* at ——, 136 S.Ct. at 734 (quoting *Penry v. Lynaugh,* 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256, 285 (1989)).

¶ 12 No published opinion from this Court has applied the principles of *Miller* and *Montgomery* to a juvenile sentenced to life without parole in Oklahoma. Guided by these recent precedents, we first turn to Luna's principal Eighth Amendment claim. The specific holding of *Graham*, prohibiting life without parole sentences for nonhomicide juvenile offenders, is inapplicable to the present case because Luna was convicted of murder and his life without parole sentence was imposed for that homicide. We consider *Graham's* broader principles concerning the special as-

pects of juvenile offenses but recognize the principles in *Miller* and *Montgomery*, both addressing juvenile homicide cases, govern our decision here.

¶ 13 Luna argues that the Court in *Montgomery* did more than give the holding in *Miller* retroactive effect; he insists the Court clarified and broadened the scope of *Miller*, and held that life without the possibility of parole is always unconstitutional for a juvenile, unless he is "permanently incorrigible" or "irreparably corrupt." He maintains that after *Montgomery*, unless the sentencer makes a finding beyond a reasonable doubt that the juvenile offender is "permanently incorrigible" and "irreparably corrupt" the juvenile offender may not be exposed to a sentence of life without the possibility of parole. He asserts his jury made no such findings in imposing his life without parole sentence and therefore he is entitled to re-sentencing or sentence modification.

¶ 14 The State maintains that *Miller* and *Montgomery* are inapplicable to Luna's case because his life without parole sentence was not mandatory under Oklahoma law.[8] *See* 21 O.S.2011, § 701.9. We agree that the core issue presented in *Miller* concerned the mandatory imposition of a natural-life sentence. But there is no genuine question that the rule in *Miller* as broadened in *Montgomery* rendered a life without parole sentence constitutionally impermissible, notwithstanding the sentencer's discretion to impose a lesser term, unless the sentencer "take[s] into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, 577 U.S. at ——, 136 S.Ct. at 733, (quoting *Miller*, 567 U.S. at ——, 132 S.Ct. at 2469). "*Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at ——, 136 S.Ct. at 734. *Montgomery* makes clear that *Miller's* distinction between children whose crimes reflect transient immaturity

and those rare children whose crimes reflect irreparable corruption are factors in the sentencing equation for any juvenile facing life without parole. *Id.* We therefore find *Miller* and *Montgomery* applicable in this case.

¶ 15 The next related question under *Miller* and *Montgomery* is whether Luna's sentencer, in exercising discretion, appropriately took into account the special characteristics of a juvenile offender in imposing a life without parole sentence. Luna argues his jury heard no evidence on the attendant characteristics of youth or his potential for rehabilitation, and made no factual findings of permanent incorrigibility and irreparable corruption prior to imposing his sentence of life without parole.

¶ 16 The State argues that if *Miller* and *Montgomery* apply, Luna is not entitled to relief because he received a sentencing hearing. The State asserts that both the jury and the trial judge in this case had the opportunity to consider Luna's youth and its attendant circumstances as well as his chances for rehabilitation. According to the State, the district court was the actual sentencer. And, the State maintains that the district court took into account necessary factors before sentencing Luna to life without parole at his formal sentencing hearing.[9]

¶ 17 Jury sentencing is a statutory right in Oklahoma. Title 22 O.S.2011, § 926.1 provides:

> In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided.

¶ 18 Section 926.1 vests the jury with authority to render punishment. Once a defendant elects a jury trial and the jury decides punishment within the applicable range of pun-

8.  Luna's jury was given the punishment options of life imprisonment with and without the possibility of parole.

9.  The record shows that defense counsel declined to present any additional evidence at formal sentencing, standing instead on arguments made at trial and reminding the district court that Luna was under 18 when he committed the crime.

ishment in its verdict, the trial court must impose the jury's punishment verdict. *See Luker v. State,* 1976 OK CR 135, ¶ 12, 552 P.2d 715, 719. As the Court explained in *Reddell v. State,* 1975 OK CR 229, 543 P.2d 574, although section 926 (now 926.1) provides that the jury "may" fix punishment,

> we feel the statutory intent is to give the jury an opportunity to pass upon the issue of punishment whether or not so requested; and if the jury find the defendant guilty and fail to agree on the punishment, or assess a punishment greater than the highest limit declared by law for the offense for which the defendant is convicted, *then and only then* can the trial court assess and declare a punishment as provided in 22 O.S.1971, § 927, and § 928.[10]

*Reddell,* 1975 OK CR 229, ¶ 31, 543 P.2d at 581–82 (Emphasis added); *see also Love v. State,* 2009 OK CR 20, ¶ 3, 217 P.3d 116, 117; *Morrison v. State,* 1980 OK CR 74, ¶ 19, 619 P.2d 203, 209. The district court charged Luna's jury with the task of deciding punishment, instructed on the punishment options, provided the appropriate verdict forms, and the prosecutor specifically asked the jury to sentence Luna to life imprisonment without parole. The sentencer in this case was Luna's jury.

¶ 19 Luna's jury understandably found him guilty of first degree murder for this senseless crime based on the evidence presented. The prosecution presented seventeen fact witnesses who convincingly established guilt. Defense counsel conceded the evidence showed his client shot and killed the victim. Defense counsel called only Jennifer Luna, Luna's mother, during the defense case in chief in this one stage trial. She testified that she was not married to Luna's father and that he was in prison. She said, without elaboration, that Luna was seventeen years old, that he grew up poor, that she was not there "half the time," and that he lived much of the time with her parents. The district court sustained the prosecution's objection to any further mitigation evidence, finding such evidence not proper for a determination of

guilt or innocence. Jennifer Luna then concluded her testimony by stating that she loved her son. During closing argument, defense counsel briefly argued that the jury should consider Luna's young age during deliberations before the district court sustained the prosecutor's objection to this argument. The court admonished defense counsel that he was "talking about stuff that is not in evidence."

¶ 20 A finding that Luna's sentencing jury considered his youth with its attendant characteristics and his chances for rehabilitation in deciding punishment is simply not supported by the record. There was no evidence pertinent to deciding whether Luna's crime reflected only transient immaturity or whether his crime reflected permanent incorrigibility and irreparable corruption. There was no evidence of important youth-related considerations, such as the juvenile's (1) "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (3) whether the circumstances suggest "possibility of rehabilitation." *Miller,* 567 U.S. at ——, 132 S.Ct. at 2468. Nor was there any evidence concerning adolescent brain development and its effect on behavior and the juvenile's capacity to consider the consequences of his wrongful acts. We must therefore conclude that Luna's sentence of life without parole is constitutionally infirm under *Miller.*

¶ 21 We turn now to the appropriate remedy for this sentence infirmity. When the Constitution prohibits a particular form of punishment for a class of persons, an affected defendant is entitled to a meaningful procedure "through which he can show that he belongs to the protected class." *Montgomery,* 577 U.S. ——, 136 S.Ct. at 735 (citing *Atkins v. Virginia,* 536 U.S. 304, 317, 122 S.Ct. 2242, 2250, 153 L.Ed.2d 335 (2002)). We cannot agree with the State that the execu-

---

**10.** Presentence investigation reports are not for the purpose of aiding the trial court in deciding whether to deviate from a jury's verdict but in deciding whether to suspend or defer a sentence or in deciding whether to run multiple counts consecutively or concurrently.

tive commutation process may serve as an adequate remedy when *Miller* error occurs. This is so because the opportunity to seek a sentence commutation through a procedure largely without evidentiary rules, with no right to obtain expert assistance or testimony, no cross-examination, compulsory process, or the assistance of counsel cannot meaningfully enforce *Miller's* prohibition. We find that *Miller* requires a sentencing trial procedure conducted before the imposition of the sentence, with a judge or jury fully aware of the constitutional "line between children whose crimes reflect transient immaturity and those *rare* children whose crimes reflect irreparable corruption."[11] *Montgomery*, 577 U.S. 460, 136 S.Ct. at 734 (emphasis added). For the reasons we have discussed, Luna's sentence of life without parole must be vacated and the matter remanded for resentencing to determine whether the crime reflects Luna's transient immaturity, or an irreparable corruption and permanent incorrigibility warranting the extreme sanction of life imprisonment without parole.

## DECISION

¶ 22 The Judgment of the district court is **AFFIRMED**. The Sentence of life without the possibility of parole is **VACATED** and the matter **REMANDED** to the district court for resentencing. Chancey Allen Luna's Application for Evidentiary Hearing on Sixth Amendment Claims is **MOOT**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

SMITH, P.J.: Concurs

LUMPKIN, V.P.J.: Concurs in Part and Dissents in Part

LEWIS, J.: Concurs

HUDSON, J.: Concurs in Part and Dissents in Part

## LUMPKIN, VICE PRESIDING JUDGE: CONCURRING IN PART/DISSENTING PART.

¶ 1 I agree that Appellant's sentence of life without parole must be vacated and the matter remanded for resentencing, however, I must dissent to the manner in which the Court arrives at this decision.

¶ 2 The Opinion wrongly expands upon the requirements of *Montgomery v. Louisiana*, 577 U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). I agree that the United States Supreme Court now requires an individualized sentencing hearing before an offender who committed his or her offense under the age of eighteen years of age may be sentenced to life without the possibility of parole. *Id.*, 136 S.Ct. at 735, citing *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 2460, 2471, 183 L.Ed.2d 407 (2012). However, the Supreme Court explained in *Montgomery* that its opinion in "*Miller* did not impose a formal factfinding requirement" as to whether the offender's "crimes reflect transient immaturity" or "irreparable corruption." *Id.* Instead, the Supreme Court carefully limited the scope of its opinion "to avoid intruding more than necessary upon the States' sovereign

11. Pending action by the Committee for the Oklahoma Uniform Jury Instructions-Criminal, we promulgate the following instruction to aid trial courts in future cases where juveniles face a possible sentence of life without the possibility of parole.
**LIFE WITHOUT PAROLE PROCEEDINGS— JUVENILES**
Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole.
You are further instructed that the defendant was a juvenile when this crime was committed. The law regards juvenile offenders generally as having lesser moral culpability and greater ca-

pacity for change than adult offenders. An offender's youth matters in determining the appropriateness of the sentence in this case.
You are therefore instructed to consider, in determining the proper sentence, whether the defendant's youth and youth-related characteristics, as well as any other aggravating and mitigating circumstances, and the nature of the crime, reflect the defendant's transient immaturity as a juvenile; or, on the other hand, irreparable corruption and permanent incorrigibility.
No person who committed a crime as a juvenile may be sentenced to life without the possibility of parole unless you find beyond a reasonable doubt that the defendant is irreparably corrupt and permanently incorrigible.

administration of their criminal justice systems." *Id.*

¶ 3 This is a matter to be addressed by the Oklahoma Legislature, however, the Legislature has not had an opportunity to take it up. See *Murphy v. State,* 2002 OK CR 32, ¶ 27 n. 14, 54 P.3d 556, 566–67 n. 14 (recognizing that Governor Frank Keating vetoed House Bill setting forth mental retardation standards before this Court adopted standards and instructions), overruled by *Blonner v. State,* 2006 OK CR 1, 127 P.3d 1135, but the Oklahoma Legislature, after being given notice, codified *Murphy* at 21 O.S.Supp.2006, § 701.10b. Until the Legislature has the opportunity to take this matter up, this Court should review the totality of the evidence presented to determine whether the sentencer had sufficient evidence to consider the offender's "youth and its attendant characteristics, along with the nature of the crime."[12] *See Montgomery,* 136 S.Ct. at 734, 735; *Miller,* 132 S.Ct. at 2460, 2471; *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204.

¶ 4 I further disagree with the limitations which the Opinion places on the sentencing judge. The Court is correct when it observes the right to have a jury help determine sentence is guaranteed by 22 O.S.2011, § 926.1. *Fite v. State,* 1993 OK CR 58, ¶ 2, 873 P.2d 293, 297–98 (Lumpkin, Presiding Judge, Specially Concurring). However, the requirement within § 926.1 that "the court shall render a judgment according to [the jury's] verdict" is subject to the clause which immediately follows it, to wit: "except as hereinafter provided." This language clearly indicates that other sections within Title 22 can modify the trial court's duty to render judgment in accordance with the jury's verdict. Sections 982, 982a, 991a, and 991c of Title 22 O.S.2011, are all examples where the Legislature has authorized the trial court to act notwithstanding the jury's recommendation as to sentence. As these statutes show, the jury's recommendation is not carved in stone, but is a recommendation which the trial judge should follow unless extenuating circumstances dictate otherwise. *Fite,* 1993 OK CR 58, ¶ 2, 873 P.2d at 297–98 (Lumpkin, Presiding Judge, Specially Concurring).

¶ 5 The majority's reliance upon *Luker v. State,* 1976 OK CR 135, 552 P.2d 715, and *Reddell v. State,* 1975 OK CR 229, 543 P.2d 574, is misplaced. The reasoning in these two cases from the mid 1970's has not kept up with the numerous amendments to Title 22. By the plain language of § 982(D), the trial court receives the presentence report at a hearing "in mitigation or aggravation of punishment." Pursuant to Section 982a(A)(1), any time within twenty-four months after imposition of the original sentence, the trial court is permitted to modify the sentence by directing that another sentence be imposed. Under the auspices of § 991a(A)(1), the trial court is authorized to suspend the execution of the sentence in whole or in part. The trial court may even defer entering a judgment of guilt for up to ten (10) years upon the specific conditions of probation as outlined in § 991(c). Thus, the trial judge has the power to deviate from the jury's recommendation when extenuating circumstances dictate.

¶ 6 Reviewing the totality of the circumstances in the present case, I find that neither the sentencing judge nor the jury had a sufficient opportunity to consider the offender's youth and attendant characteristics relating to youth along with the nature of the crime. Therefore, the case should be remanded for resentencing.

## HUDSON, JUDGE: CONCURRING IN PART/DISSENTING IN PART

¶ 1 I agree that Appellant's first degree murder conviction should be affirmed. Unfortunately, I also agree that Appellant's life without parole sentence must be vacated and the matter remanded for resentencing. This is because Appellant was not given the type of individualized sentencing proceeding now mandated by *Miller v. Alabama,* 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and *Montgomery v. Louisiana,* 577

---

**12.** There is a "wealth of characteristics and circumstances attendant to [youth]" which a juvenile offender may choose to present in an individualized sentencing proceeding. *See Miller v. Alabama,* 567 U.S. 460, 132 S.Ct. 2455, 2467, 183 L.Ed.2d 407 (2012).

U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). After *Miller* and *Montgomery*, States must ensure that defendants facing a life without parole sentence for homicides committed before the age of eighteen (18) receive an individualized sentencing procedure that considers evidence relating to their youth and immaturity at the time of the offense. I disagree, however, with the majority's approach on remand.

¶ 2 In this case, the trial court disallowed Appellant's attempt to present evidence to the jury of mitigating circumstances related to his youth and background. Moreover, trial counsel did not present such evidence at formal sentencing to supplement the information contained in the presentence investigation report. 22 O.S.2011, § 982(D) ("If either the defendant or the district attorney desires, a hearing shall be set by the court to allow both parties an opportunity to offer evidence proving or disproving any finding contained in a [PSI] report, **which shall be a hearing in mitigation or aggravation of punishment.**") (emphasis added). Hence, the trial court was given no reason at formal sentencing to deviate from the jury's sentencing recommendation. I agree with Judge Lumpkin that the jury's recommendation as to punishment is just that—a recommendation the trial court should follow absent extenuating circumstances—and that the trial court here retained authority to deviate from the jury's recommended sentence to address the constitutional issues raised by *Miller* and *Montgomery*.

¶ 3 However, the majority opinion wrongly expands the requirements of *Miller* and *Montgomery* by mandating that the jury on remand find beyond a reasonable doubt that Appellant is irreparably corrupt and permanently incorrigible. The Supreme Court has not adopted a formal fact-finding requirement nor mandated any formal framework for sentencing. *Montgomery*, 136 S.Ct. at 735; *Miller*, 132 S.Ct. at 2471, 2475. We must be mindful that the Court in *Miller* specifically addressed the constitutionality of a *mandatory* life without parole sentencing scheme, which Oklahoma does not have. In finding that the "Eighth Amendment forbids a sentencing scheme that mandates life in

prison without possibility of parole for juvenile offenders", *Miller*, 132 S.Ct. at 2469, the Court reasoned in part that:

> Mandatory life without parole for a juvenile *precludes* consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.

*Id.*, 132 S. Ct. at 2468 (emphasis added).

¶ 4 Notably, the Court in *Montgomery* did not expand the Court's holding in *Miller*. At issue in *Montgomery* was whether *Miller* should be applied retroactively. *Montgomery*, 136 S.Ct. at 725. Granted, it is undeniable that the Court utilized *Montgomery* to provide additional guidance-albeit in *dicta*, *see People v. Holman*, 405 Ill.Dec. 371, 58 N.E.3d 632, 642–43 (Ill. App. 2016)—regarding the implications of *Miller*, which this Court cannot discount despite Oklahoma's non-mandatory life without parole sentencing option.

¶ 5 Had evidence of mitigating circumstances like that discussed in *Miller* and *Montgomery* been presented either at trial or formal sentencing, I do not believe there would be any constitutional infirmity with Appellant's sentence. Such evidence would have allowed the jury and the trial court to consider in determining sentence whether the murder of Christopher Lane was a product of the transient "immaturity, irresponsibility, impetuousness, and recklessness" of Appellant's youth, *Miller*, 132 S.Ct. at 2467 (quoting *Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993)), or whether Appellant is "the rare juvenile offender whose crime reflects irreparable corruption." *Miller*, 132 S.Ct. at 2469 (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)). That is all *Miller* and *Montgomery* require. The jury was not required to make specific factual

findings on these issues—let alone make such findings beyond a reasonable doubt. We do not impose that level of exacting certitude for the balance of aggravating and mitigating circumstances leading to the ultimate selection of sentence in a capital case. *See, e.g., Malone v. State*, 2013 OK CR 1, ¶ 84, 293 P.3d 198, 220. I fail to see why we would require this for the noncapital sentencing decision in this case. I therefore dissent to the majority's approach in this regard.

¶ 6 Whether this Court agrees with it or not, the handwriting is on the wall. Clarifying *Miller* in *Montgomery*, the United States Supreme Court clearly interprets the Eighth Amendment to prohibit life without parole *in the majority* of juvenile homicide offender cases, restricting imposition of this sentence to the rare juvenile "whose crime reflects irreparable corruption." *Miller*, 132 S.Ct. at 2469. Thus, this matter highlights the need in cases of this type for the sentencer to be presented with and consider mitigating circumstances like that discussed in *Miller* and *Montgomery*. Ultimately, legislative intervention is needed in this area to address the appropriate procedural framework. *See* 22 O.S.2011, § 975. One relatively straightforward option would involve implementation of a trial proceeding in which relevant mitigating evidence is presented to the jury during the sentencing portion of a bifurcated trial proceeding.

¶ 7 Based upon the foregoing, I concur in part and dissent in part to the majority's analysis.