2001 OK CR 21

**Richard Eugene GLOSSIP, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. D 98–948.**

Court of Criminal Appeals of Oklahoma.

July 17, 2001.

As Corrected Aug. 17, 2001.

Rehearing Denied Aug. 20, 2001.

Wayne M. Fournerat, Attorney At Law, Oklahoma City, OK, Attorney For Defendant.

Fern Smith, Jack Durrett, Asst. District Attorneys, Oklahoma County Courthouse, Oklahoma City, OK, Attorneys For The State.

G. Lynn Burch, III, Matthew D. Haire, Appellate Defense Counsel, Oklahoma Indigent Defense System; Norman, OK, Attorneys For Appellant.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, Attorneys For Appellee.

## OPINION

JOHNSON, Vice–Presiding Judge:

¶1 Appellant, Richard Eugene Glossip, was convicted in Oklahoma County District Court, Case No. CF 97–244, of Murder in the First Degree, in violation of 21 O.S.1991, § 701.7(A).[1] Jury trial was held June 1st through 10th, 1998, before the Honorable Richard W. Freeman, District Judge. The jury found two aggravating circumstances-(1) that the murder was especially heinous, atrocious, or cruel and (2) that Appellant would pose a "continuing threat" to society-and recommended a penalty of death. Judgment and Sentence was imposed on July 31, 1998.

¶2 Appellant perfected his appeal by filing his Petition in Error on February 1, 1999. His initial brief was filed on April 17, 2000. The State's brief was filed on August 15, 2000, and Appellant's Reply brief was filed September 5, 2000. Appellant also filed on April 17, 2000, an Application for Evidentiary Hearing on Jury Misconduct Claims, an Application for Evidentiary Hearing on Sixth Amendment Claims, and Appellant's Notice of Extra–Record Evidence Supporting Prosecutorial Misconduct and Violations of Due Process Clauses of the Oklahoma and Federal Constitutions. We remanded the case to the district court for an evidentiary hearing. *See Order Remanding to the Presiding Judge of Oklahoma County for an Evidentiary Hearing on Claims of Jury Misconduct, Ineffective Assistance of Counsel, and Prosecutorial Misconduct, etc.,* D 1998–948 (Okl.Cr. December 7, 2000)(not for publica-

---

1. Appellant was charged cojointly with Justin Blayne Sneed. (O.R.5). The State filed its bill of particulars on April 23, 1997, alleging the murder was especially heinous, atrocious or cruel and that Appellant constituted a continuing threat to society. (O.R.31).

tion). The hearing was held March 5, 2001, before the Honorable Twyla Gray, District Judge, and the trial court's Findings of Fact and Conclusions of Law After Evidentiary Hearing were filed in this Court on March 16, 2001. Both parties filed Supplemental Briefs on March 23, 2001.

¶ 3 Appellant raised twelve propositions of error in his appeal. Two propositions required fact-finding outside the appeal record and were addressed at the March 5, 2001 evidentiary hearing. The claim of jury misconduct was also addressed at the evidentiary hearing. Having reviewed the entire record before us, we have determined that oral argument is not warranted or necessary as further argument on the claims and issues raised in this case would not be helpful or convincing to the Court.

¶ 4 Only a brief statement of facts is necessary, because Appellant's claim of ineffective assistance of counsel is compelling and requires relief. For the reasons set forth below, we find Appellant's conviction for Murder in the First Degree should be and hereby is **REVERSED AND REMANDED FOR NEW TRIAL.**

¶ 5 On January 7, 1997, the body of Barry Van Treese was discovered in Room 102 of the Best Budget Inn in Oklahoma City. Van Treese had been severely beaten and died as a result of blood loss and blunt force trauma to his head. Following the discovery of the body, Oklahoma City police detectives interviewed Appellant, who was the manager of the Best Budget Inn. They also interviewed Justin Sneed, who was charged as a co-defendant in this case and who worked for Appellant as a maintenance man in exchange for a free room at the motel. At Appellant's trial, Sneed said he beat Van Treese to death by hitting him ten or fifteen times with a baseball bat. Sneed testified he killed Van Treese because Appellant asked him to do it. Sneed admitted he made an agreement with the State to testify against Appellant in exchange for a sentence of life without parole.

¶ 6 At all times prior to trial and during trial, Appellant denied involvement in the murder of Barry Van Treese. Although his statements to police officers changed somewhat between his first and second police interview, he consistently denied encouraging or telling Sneed to commit the murder. Appellant only admitted his involvement in the murder "after the fact." He admitted he was afraid to tell the police what he knew and admitted he assisted Sneed by helping conceal the murder scene.

¶ 7 On appeal and at trial, the State's theory of the case remained the same-Sneed was a poor, vulnerable young man and Appellant masterminded the murder by manipulating (asking or telling) Sneed to do it. The State concedes the only "direct evidence" connecting Appellant to the murder was Sneed's trial testimony. No forensic evidence linked Appellant to murder and no compelling evidence corroborated Sneed's testimony that Appellant was the mastermind behind the murder.

¶ 8 The evidence at trial tending to corroborate Sneed's testimony was extremely weak. We recognize a conviction cannot be had upon the testimony of an accomplice unless it is "corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof." 22 O.S.Supp.2000, § 742. However, we need not reach Appellant's claim going to the sufficiency of the evidence,[2] because trial counsel's conduct was so ineffective that we have no confidence that a reliable adversarial proceeding took place.

¶ 9 Appellant raised twelve propositions of error. Although several errors occurred at trial which alone might necessitate reversal, we only discuss those matters impacting our decision today and those which should be considered if Appellant is retried for this crime.

¶ 10 In Proposition Two, Appellant claims his trial counsel represented him "in a pervasively ineffective manner to the profound prejudice of Appellant, leading to a collapse of the adversarial process and a denial of Appellant's right to counsel guaranteed by the Sixth Amendment." We agree and pref-

**2.** Appellant raised sufficiency of the evidence in Proposition One of his Brief.

ace our analysis of this claim by emphasizing the State's evidence was circumstantial except for the testimony of Justin Sneed.

¶ 11 Analysis of this claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction .... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* at 688–89, 104 S.Ct. at 2065–66.

¶ 12 Appellant claims his trial counsel: (1) failed to engage in meaningful cross-examination or utilize potent impeachment evidence; [3] (2) failed to adequately prepare by familiarizing himself with discovery obtained from the State; (3) failed to conduct proper voir dire; (4) failed to object to improper double hearsay testimony; (5) failed to move the trial court to answer the jury's question regarding culpability for not rendering aid; and (6) failed to object to improper victim impact evidence. Appellant filed an Application for Evidentiary Hearing on Sixth Amendment Claims, pursuant to Rule 3.11(B)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.(2001). Although some of Appellant's ineffectiveness claims are obvious from simply reading the appeal record,[4] several, including trial counsel's failure to utilize available and potent impeachment evidence against Justin Sneed, are supported by matters outside the record.[5]

¶ 13 Reviewing the claims in the Application, in conjunction with the serious allegations made and the record before us, this Court determined Appellant had shown "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2001); *Order Remanding to the Presiding Judge of Oklahoma County for an Evidentiary Hearing on Claims of Jury Misconduct, Ineffective Assistance of Counsel, and Prosecutorial Misconduct, etc.*, D 1998–948 (Okl.Cr. December 7, 2000)(not for publication). We remanded for an evidentiary hearing.[6] We directed the trial court to enter appropriate findings of fact and conclusions of law and to determine: (1) the availability of the evidence or witness; (2) the effect of the evi-

3. This claim is the most egregious of the ineffectiveness claims. Specifically, this subclaim relates to trial counsel's failure to utilize the videotaped interview of Justin Sneed and his failure to utilize the record of Sneed's competency evaluation for impeachment purposes.

4. The record aptly demonstrates trial counsel's failure to object to extremely prejudicial double hearsay, failure to object to prejudicial victim impact evidence, and failure to offer a proposed response to the jury's question concerning culpability for failure to render aid. The record also demonstrates counsel's failure to obtain and review discovery and other evidentiary materials, his failure to obtain the presence of witnesses, and his general lack of advocacy skills.

5. The Exhibits attached to the Application for Evidentiary Hearing were not admitted at trial. They address trial counsel's failure to utilize available and important impeachment evidence against the State's star witness Justin Sneed (Exhibits 1, 2, 3, 4 and 7), his failure to adequately prepare for trial and present a relevant and sound theory of defense (Exhibit 6), and his failure to prepare proposed mitigation instructions or second stage closing argument (Exhibit 5).

6. The matter was remanded for an evidentiary hearing on the Sixth Amendment claims asserted in Proposition Two and the Application, as well as to address other claims raised in the Application for Evidentiary Hearing on Jury Misconduct Claims and Appellant's Notice of Extra–Record Evidence Supporting Prosecutorial Misconduct and Violations of Due Process Clauses of the Oklahoma and Federal Constitutions.

dence or witness on the trial court proceedings; (3) whether the failure to use a witness or item of evidence was trial strategy; and (4) if such evidence or witness was cumulative or would have impacted the verdict rendered. *See* Rule 3.11(B)(3)(b)(iii).

¶ 14 The evidentiary hearing was held March 5, 2001, and the trial court's Findings of Facts and Conclusions of Law were filed in this Court on March 13, 2001. Ultimately, the trial court found Appellant had shown by "clear and convincing evidence that he was prejudiced by the ineffectiveness of counsel and that this Court cannot have confidence in the outcome of the trial."

¶ 15 As noted above, Appellant made six claims relating to ineffective counsel. Two claims-trial counsel's failure to engage in meaningful cross-examination or utilize potent impeachment evidence and his failure to adequately prepare for trial by familiarizing himself with discovery obtained from the State-required fact-finding outside the appeal record and were addressed at the evidentiary hearing. Prior to the hearing, Judge Gray [7] reviewed the entire trial transcript, including the testimony of Justin Sneed, and watched the videotaped interview of Justin Sneed conducted on January 14, 1997, by Oklahoma City police Detectives Bemo and Cook.[8]

▌ ¶ 16 Trial counsel's failure to utilize important impeachment evidence against Justin Sneed stands out as the most glaring deficiency in counsel's performance.[9] Evidence of counsel's failure to utilize the videotape of Justin Sneed is also apparent from the trial record. This interview was repeatedly referred to by trial counsel and by the State. During first stage deliberations, the jury requested to view the videotape of Justin Sneed even though it was not admitted into evidence. At trial, trial counsel attempted to impeach Detective Bemo with

portions of the videotape, but was unable to lay an appropriate foundation. Judge Freeman talked trial counsel out of using the videotape to impeach Detective Bemo; trial counsel indicated he would use the tape to impeach Justin Sneed. However, when the time came to impeach Sneed, trial counsel failed to utilize the videotape at all.

¶ 17 At the evidentiary hearing, Judge Gray determined the videotape was available and could have been used as impeachment evidence against both Detective Bemo *and more importantly* against Justin Sneed, but trial counsel never laid a proper foundation for its use against Detective Bemo and did not even attempt to confront Sneed with the discrepancies and inconsistencies on the tape. Judge Gray noted the numerous inconsistencies between Sneed's trial testimony and his videotaped confession. She identified at least seven material inconsistencies and noted at least five things in Sneed's trial testimony that he had completely omitted from his videotaped statement. The most obvious and prejudicial of these omitted statements was Sneed's revelation that Appellant told him "to pick up some trash bags, a hack saw and I believe some … muriatic acid … He was wanting to pour the acid upon the body and then saw up the rest of the body and put it in trash bags to be able to move it out of the room." Trial counsel did not impeach Sneed by pointing out that he had never mentioned that obviously material fact on the videotape. Judge Gray observed that trial counsel "missed multiple opportunities to test Sneed before the jury." Noting the State's star witness was Justin Sneed, the gist of Judge Gray's findings was that no reasonable trial strategy could have supported a decision not to utilize this impeachment evidence against him.

¶ 18 Judge Gray considered the testimony of Captain Charles Rexford on Appellant's

---

7. We take this opportunity to commend Judge Gray for her serious and studied handling of this matter on remand. The details of her Findings of Fact and Conclusions of Law are excellent. The Judge put in many hours to complete her task. She is complimented for making a hard decision and not taking the easy way out by condoning trial counsel's conduct.

8. At trial, this videotape was identified as State's Exhibit 4 and was not admitted at trial; the videotape was attached to the Application for Evidentiary Hearing on Sixth Amendment Claims as Exhibit 1. A transcription of the videotape is attached to the Application as Exhibit 2.

9. In this subclaim, Appellant contends counsel should have utilized the Sneed videotape and Dr. King's report on competency to impeach Sneed.

claim that his counsel was obviously ill-prepared and had no cogent defense theory. After hearing Rexford's testimony, Judge Gray found trial counsel presented an ill-prepared, incomprehensible defense that other individuals committed the murder based upon a five-minute telephone conversation with Rexford about a murder that occurred in 1984. She noted trial counsel did not review the State's investigative reports on the 1984 murder, did not arrange to have the other "suspect" testify, and had clearly not reviewed the law applicable to the trial court's determination whether Rexford's testimony would even be admissible. Ultimately, Judge Gray determined that Rexford's testimony showed the theory of defense put forth by trial counsel was "ill-conceived and unsupportable (sic). Having a theory of defense is very important. It cannot be trial strategy to misstate the facts to the judge and jury." She found trial counsel had not adequately researched the law and his ill-preparedness impacted his performance at all stages of trial.[10]

¶ 19 Judge Gray found trial counsel failed to adequately prepare for trial and the trial mistakes (addressed at the evidentiary hearing) were not part of any trial strategy. His failure to utilize available impeachment evidence against Justin Sneed, upon whose testimony the State's entire case relied, was deficient performance and was clearly prejudicial. She ultimately concluded Appellant met both prongs of *Strickland.*

¶ 20 This Court will give the trial court's findings strong deference if supported by the record, but we shall determine the ultimate issue of whether trial counsel was ineffective. Rule 3.11(B)(3)(b)(iv), *Rules of the Court of Criminal Appeals*, Title 22, Ch.18, App. (2001). After careful review and consideration of the record, we find the trial court's

findings and conclusions are supported by the record and we shall address Appellant's remaining ineffective assistance of counsel claims in accordance therewith.

¶ 21 Although we find the claim that trial counsel did not conduct proper voir dire unpersuasive,[11] the remaining claims demonstrate trial counsel's ineffectiveness. There was no excuse for trial counsel's failure to object to inadmissible double hearsay-Detective Bemo's testimony that he talked to William Bender who said that Van Treese said he was going to move Glossip out of the motel. This testimony was inadmissible hearsay, was offered for no other reason than to prove the truth of the matter asserted, and was extremely prejudicial. It was arguably the only evidence presented at trial that tended to independently corroborate any portion of Justin Sneed's testimony implicating Appellant in the crime and establishing a motive.[12]

¶ 22 Further, trial counsel's failure to object to Judge Freeman's handling of the jury's question regarding culpability for failing to render aid also was unreasonable and constituted deficient performance. The record demonstrates Appellant always maintained his innocence as a principal to the crime; he always admitted his involvement after the fact. Trial counsel totally missed this opportunity to reargue his request for an instruction on accessory after the fact at this juncture. This claim will be more fully discussed below.

¶ 23 Lastly, trial counsel's complete failure to object to the State's victim impact evidence was deficient under prevailing professional norms.[13] The State did not comply with *Cargle v. State*, 1995 OK CR 77, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), and 22

---

10. As to counsel's failure to utilize Dr. Edith King's report on Sneed's competency, Judge Gray found the report would not have been admissible at trial and it would have been improper to attempt to impeach Sneed with it. Judge Gray also found Pat Ehler's testimony on trial counsel's ill-preparedness for second stage was inadmissible and prohibited Ehler's from testifying at the evidentiary hearing under Rules 1.7, 1.9, 1.10 and 3.7, *Rules of Professional Conduct*, 5 O.S.Supp.2000, Ch.1, App. 3–A.

11. This claim was raised in Proposition Ten of Appellant's Brief.

12. This claim was raised in Proposition Seven of Appellant's Brief.

13. A claim relating to the prejudicial victim impact statement was raised in Proposition Five.

O.S.Supp.1999, § 984. The victim impact statement admitted here went *far* beyond what was admissible under the guidelines previously set forth by this Court and was so inflammatory and prejudicial it very likely influenced the jury's decision to impose a death sentence. It was unreasonable for trial counsel to allow this inflammatory evidence to be admitted and heard without any objection.

¶ 24 Trial counsel's lack of preparation is also apparent from his repeated statements prior to and during the trial referencing Appellant's ability to change his plea or Appellant's refusal to follow his advice to enter a blind plea to the murder charge. We also note other examples of unreadiness which are evident in the record: trial counsel's last minute requests for discovery which the State had already provided or had previously given counsel the opportunity to obtain; trial counsel's telling the jury "Howard Bender" was a fictitious person when his identity was known and obvious from discovery materials; trial counsel's failure to lay a proper foundation for the admission of evidence or testimony; trial counsel's objection to lack of notice withdrawn because trial counsel did have notice; trial counsel's failure to secure a witness whom counsel repeatedly referred to as a suspect in front of the jury; trial counsel's "calling" a witness (by yelling for him in the hallway during trial) to show the witness was not present; trial counsel's forgetting to demur to the evidence until prompted by the trial judge. Trial counsel also was not prepared for second stage. Although he prepared a list of mitigating factors for the jury's consideration, it was apparently one prepared in haste. Further, the only witness other than Appellant who testified during second stage was Appellant's mother, and counsel failed to ask her whether she wanted her son's life spared until prompted by the trial judge.

¶ 25 The record as a whole suggests that trial counsel was not prepared for trial, had not formulated any reasonable defense theory, fully expected Appellant to enter a plea, and never expected to get to the second stage of the trial. For the reasons noted by the trial court after the evidentiary hearing,

and for the reasons noted above, we find counsel's performance deficient and we find his failures could not have been part of any sound or reasonable trial strategy. Under the facts of this case and considering the weight of the evidence presented at trial, Appellant was prejudiced by his trial counsel's performance and we cannot say his trial produced a reliable result. *Strickland.* For these reasons, we find this claim warrants reversal and hereby remand this case for a new trial.

¶ 26 Several other issues warrant discussion to prevent the same mistakes from occurring on retrial. In Proposition Five, Appellant argued the admission of Donna Van Treese's victim impact statement during the second stage of trial violated the Evidence Code, 22 O.S.Supp.1999, § 984, and his state and federal constitutional rights. We agree. The trial court and the State failed to comply with the procedures set forth in *Cargle*, 1995 OK CR 77, ¶¶ 75–77, 909 P.2d at 828. The majority of the victim impact statement was outside the scope of permissible victim impact evidence, was unduly prejudicial and was not probative of "those unique characteristics which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family." *Id.,* 1995 OK CR 77, ¶ 75, 909 P.2d at 828; *see also Welch v. State,* 2000 OK CR 8, ¶ 42, 2 P.3d 356, 373, *cert. denied,* 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567 (2000)(testimony about son placing flowers at grave and brushing dirt away did not fall within statutory guidelines had little probative value and was more prejudicial than probative); *Washington v. State,* 1999 OK CR 22, ¶ 62, 989 P.2d 960, 978–979 (references to God and a higher power are improper in victim impact statement).

¶ 27 Proposition Eight also warrants some discussion. Under the very specific facts of this case, Appellant was entitled to a jury instruction on the crime of accessory after the fact.

¶ 28 The trial court has a duty to instruct on all lesser-included or lesser-relat-

ed offenses which are supported by the evidence. *Childress v. State*, 2000 OK CR 10, ¶ 14, 1 P.3d 1006, 1011; *Shrum v. State*, 1999 OK CR 41, ¶¶ 5–6, 991 P.2d 1032, 1036. A defendant is also entitled to an instruction on his theory of defense if it is supported by the evidence and is tenable as a matter of law. *Kinsey v. State*, 1990 OK CR 64, ¶ 9, 798 P.2d 630, 632–633. The test this Court uses to determine whether evidence of a lesser included offense is sufficient to warrant a jury instruction is no different than the test used to determine when the evidence is sufficient to warrant a jury instruction on the defendant's theory of defense. *Bland v. State*, 2000 OK CR 11, ¶ 56, 4 P.3d 702, 719–720, *cert. denied*, 531 U.S. 1099, 121 S.Ct. 832, 148 L.Ed.2d 714 (2001). It is the judge's responsibility to determine whether *prima facie* evidence of the lesser included offense (or evidence of the proposed defense) has been presented to warrant the instruction. *Id.* at ¶ 57, 4 P.3d 702.

■ ¶ 29 Certainly where, as here, a defendant maintains his innocence to a charge of murder which rests upon a theory that he "counseled" another to commit the murder and the defendant *defends* the case on the theory that he only knew of the murder after the fact and did not disclose what he knew, the evidence is sufficient to establish a *prima facie* case warranting an instruction on accessory after the fact. Under the evidence presented, we believe accessory after the fact was a related offense, was Appellant's "theory" of defense, and the instruction should have been given.

¶ 30 The last claim we address was brought to our attention in Appellant's Application for Evidentiary Hearing on Jury Misconduct Claims. This Application was filed with Appellant's Brief and raises, in part, a claim alleging one or more jurors utilized extraneous materials, a Bible, during deliberations and possibly in arriving at their verdict(s). Affidavits of two jurors were attached to the Application noting the discussion of and reading of the Bible by one or more jurors during deliberations. Because of the seriousness of allegations involving the jury's receipt and consideration of extraneous materials, we remanded this issue for consideration at the evidentiary hearing. We instructed the trial court to make findings regarding whether extraneous material, specifically a Bible, was physically brought by one or more jurors into the jury deliberation room; and, whether the same was/were referred to and utilized by jurors during their deliberations in the first or second stage of Appellant's jury trial.

¶ 31 Judge Gray considered evidence supporting this allegation at the evidentiary hearing held March 5, 2001. Nine of the twelve jurors from Appellant's trial testified at the hearing. Juror Casey Fine testified he brought his Bible into the deliberation room during both first and second stage deliberations. Fine said he opened and referred to it "when asked." He could not recall the name of the juror who asked him something about the Bible, but said it was not one of the jurors present to testify at the evidentiary hearing. Juror Jere Osburn saw the Bible in the deliberations room and testified it was physically opened or referred to or read from during deliberations. Juror James Hardy testified there was a Bible in the deliberation room, but said it was not opened or referred to during deliberations.

¶ 32 Jurors Rodden, Brooks, Chappell and Selensky each testified he or she did not "recall" or "remember" a Bible being physically present during deliberations. Juror McWilliams admitted one juror had a Bible with him everywhere and probably during both stages of deliberations, but McWilliams said it was not opened or referred to. Juror Armstrong said he was not exactly sure one way or the other.

¶ 33 After considering this testimony, Judge Gray found "credible evidence that a Bible was physically in the jury room during deliberations" and "credible evidence that the Bible was not actually utilized during deliberations." We review those factual findings applying the deferential abuse of discretion standard. *Young v. State*, 2000 OK CR 17, ¶ 109, 12 P.3d 20, *cert. denied*, —— U.S. ——, 121 S.Ct. 2200, 149 L.Ed.2d 1030 (2001); *see e.g. Bear v. State*, 1988 OK CR 181, ¶ 8, 762 P.2d 950, 954 (resolution of questions of fact are entitled to special deference by a reviewing court); *Ellis v. State*, 1990 OK CR 43,

¶ 11, 795 P.2d 107, 110 (trial court's resolution of underlying factual questions subject to "clearly erroneous" standard of review).

 ¶ 34 Utilizing the above standard, we believe the trial court was presented with credible evidence to show that at least one Bible was, in fact, in the jury room during first and second stage and may well have been referred to in and during jury deliberations.

¶ 35 We were recently confronted with a similar claim in *Young, id.* There, we affirmed "there is no question that a jury's receipt of extraneous material not admitted at trial may have an improper influence upon the jury's verdict." Because the trial court in *Young* determined there was no extraneous material, i.e. a Bible, in deliberations, we did not reach the question whether physically utilizing a Bible and its verses during deliberations constituted receipt of extraneous material and an improper influence on the jury's deliberations. *Id.* at ¶ 113, 12 P.3d 20.

¶ 36 Again, because we reverse this case on Appellant's claim of ineffective assistance of counsel, we need not fully address this claim and its impact upon the jury's determination of guilt and sentence. However, we are compelled to caution trial courts to remind jurors they are to utilize *only* the jury instructions and consider *only* the evidence presented at trial in arriving at their determinations of guilt and sentence. Any outside reference material, including but not limited to Bibles or other religious documents, dictionaries, or any other reference book, should not be taken into or utilized during jury deliberations. Such documents and texts may be left in custody of the bailiff and returned to the jurors at the conclusion of deliberations. Enforcement of such a procedure will foreclose future claims similar to the one raised in this case and the one previously addressed in *Young.*

### Conclusion

¶ 37 Glossip's conviction for First Degree Malice Aforethought Murder is **REVERSED AND REMANDED FOR A NEW TRIAL.**

LUMPKIN, P.J., and CHAPEL and STRUBHAR, JJ., concur.

LILE, Judge: concurs in results.

¶ 1 Judge Gray's *Findings of Fact and Conclusions of Law After Evidentiary Hearing* was comprehensive and compelling. I concur in her conclusion that trial counsel representation was inadequate. This was not a fair trial. I agree that this case must be reversed and remanded for new trial for this reason alone.

¶ 2 I have full confidence that the retrial will be conducted according to law.