NEWMAN v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:NEWMAN v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 NEWMAN v. STATE
2020 OK CR 14
466 P.3d 574
Case Number: F-2018-1178
Decided: 06/04/2020
JERRY LEE NEWMAN, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2020 OK CR 14, 466 P.3d 574

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Jerry Lee Newman was tried by a jury in the District Court of Tulsa County, Case No. CF-2017-3086, for the crimes of First Degree Felony Murder -- Eluding an Officer (Count 1) in violation of 21 O.S.Supp.2012, § 701.7(B); Larceny of Automobile (Count 2) in violation of 21 O.S.2011, § 1720; Obstructing an Officer (Count 3) in violation of 21 O.S.Supp.2015, § 540; Leaving the Scene of a Fatality Collision (Count 4) in violation of 47 O.S.2011, § 10-102.1; Driving with License Suspended (Count 5) in violation of 47 O.S.Supp.2016, § 6-303(B); and Assault with a Dangerous Weapon (Count 6) in violation of 21 O.S.2011, § 645. Newman was convicted on Counts 1-5 and acquitted on Count 6. The jury assessed punishment at life in prison with the possibility of parole and a $10,000.00 fine on Count 1, twenty-three years imprisonment on Count 2, thirty years imprisonment and a $10,000.00 fine on Count 4, and one year and a $500.00 fine on each of Counts 3 and 5. The Honorable William D. LaFortune, District Judge, presided over the trial and sentenced Newman in accordance with the jury's recommendation ordering the sentence imposed in Count 2 to run consecutive to Count 1, Count 3 to run concurrent with Count 2, Count 4 to run consecutive to Counts 1, 2, and 3, and Count 5 to run concurrent with Count 4. Newman appeals his Judgment and Sentence raising the following issues:

(1) whether there was sufficient evidence to convict him beyond a reasonable doubt of first degree felony murder-eluding an officer;

(2) whether he was denied a fair trial when the trial court erred by failing to instruct the jury on the lesser related offense of second degree felony murder;

(3) whether the trial court erred in admitting prejudicial photographs into evidence;

(4) whether the use of improper other crimes evidence deprived him of a fair trial;

(5) whether use of the crime of eluding a peace officer as the predicate felony for first degree felony murder violated the intended use of the felony murder statute;

(6) whether prosecutorial misconduct denied him his due process rights to a fair trial;

(7) whether he was denied effective assistance of counsel; and

(8) whether an accumulation of error deprived him of a fair trial.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.

FACTS

¶3 At 5:00 a.m. on May 24, 2017, Donald Watkins, a self-employed truck driver, was sitting in his truck at Rush Peterbilt Truck Center in Sapulpa waiting for the business to open. Around 5:30 a.m., a man wearing a red hoodie and carrying a backpack walked beside his truck. After watching this man attempt to get into numerous locked vehicles on the property and into the locked building, Watkins called 911 to report the suspicious behavior.

¶4 Three Sapulpa police units responded to the 911 call, one standing by with Watkins while the other two went to different locations on the property. One of these three officers, Sapulpa Police Captain Steve Thompson, saw a large white Oklahoma Natural Gas utility truck driving toward him through the lot. The truck accelerated and drove through the fence, and Captain Thompson was forced to move his patrol car to avoid being hit.

¶5 The truck sped off the lot with at least two patrol cars giving chase with lights and sirens activated, and others from the Tulsa Police Department and the Oklahoma Highway Patrol joining the pursuit. The utility truck proceeded through Sapulpa and its outskirts for nearly half an hour, running red lights and stop signs at speeds of up to 89 mph. When the truck entered State Highway 75 driving southbound in the northbound lane, the pursuing officers pulled to the shoulder and increased the distance between them and the utility truck while trying to keep the truck in sight. They kept their lights and sirens activated to warn the cars on the highway to yield or slow down while others attempted to catch up with the utility truck by driving parallel to it in the proper southbound lane of the highway.

¶6 Many and perhaps all of the officers lost sight of the utility vehicle when they slowed or exited the northbound lane, but they quickly came upon a collision wherein the utility truck had struck a small white car head on. The driver of the white car was dead at the scene and the ONG truck was rolling slowly toward a fence off the side of the highway. A witness who passed the utility truck on the highway seconds before the collision heard the impact and immediately stopped at about the same time that patrol cars arrived on the scene. Another witness saw a man wearing red over blue running behind the utility truck after the crash. When the officers checked, the man was gone and there was no one inside or around the utility truck leading officers to assume its driver had jumped the fence.

¶7 The police developed information about the identity of the driver of the utility truck, and later that same day Jerry Newman was taken into custody and booked into the Tulsa County Jail. In a recorded telephone call made to his father from the jail, Newman admitted to being the driver of the stolen utility truck. Furthermore, video taken by a DriveCam in the cab of the ONG truck clearly shows that Newman was driving the vehicle. At trial, Donald Watkins, the truck driver who called 911 from the Sapulpa business, also identified Newman as the person he watched walk around the lot trying to get into vehicles and the building that early morning.

1.

¶8 In his first proposition, Newman claims that the evidence presented at trial was insufficient to support his conviction for first degree felony murder -- eluding an officer. This Court reviews challenges to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. See Logsdon v. State, 2010 OK CR 7, ¶ 5, 231 P.3d 1156, 1161; Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. In evaluating the evidence presented at trial, we accept the fact-finder's resolution of conflicting evidence as long as it is within the bounds of reason. See Day v. State, 2013 OK CR 8, ¶ 13, 303 P.3d 291, 298. See also Davis v. State, 2011 OK CR 29, ¶ 83, 268 P.3d 86, 112-13 ("The credibility of witnesses and the weight and consideration to be given to their testimony are within the exclusive province of the trier of facts and the trier of facts may believe the evidence of a single witness on a question and disbelieve several others testifying to the contrary."). "Pieces of evidence must be viewed not in isolation but in conjunction, and we must affirm the conviction so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt." Davis v. State, 2004 OK CR 36, ¶ 22, 103 P.3d 70, 78 (quoting Matthews v. State, 2002 OK CR 16, ¶ 35, 45 P.3d 907, 919-20). This Court also accepts all reasonable inferences and credibility choices that tend to support the verdict. Coddington v. State, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456.

¶9 Newman's specific claim is that because at the time of the deadly crash officers had backed off their active pursuit, he was no longer in the commission of the crime of eluding an officer and thus not guilty of felony murder. In support of this argument, Newman directs this Court's attention to the testimony of Sapulpa Police Officer David Snelson that when Newman started driving southbound in the northbound lane of a major highway, the pursuit was terminated. However, Officer Snelson clarified, "In other words, we quit actively chasing him in the southbound lane northbound." He added that the officers were still attempting to catch up with Newman by driving parallel to him while driving southbound in the southbound lane.

¶10 Newman takes too myopic a view of his own actions and the consequences thereof. He stole a truck, crashed through a fence, and spent more than half an hour running from up to a dozen police officers. When it became too dangerous to maintain the direct pursuit, officers did their best to back off but still keep him in sight although at times just prior to the crash they lost visual contact with him. The fact that the officers chose not to follow him speeding the wrong way down a highway does not magically end his commission of the crime nor does it absolve him of criminal liability for it. The evidence, when viewed in the light most favorable to the State, proved each element of the crime of first degree felony murder and the predicate crime of eluding an officer, beyond a reasonable doubt.

¶11 Newman also argues in this proposition that the jury instruction defining "in the commission of" was confusing. The instruction, not met with objection below, was given as follows:

A person is in the commission of eluding an officer when he is performing an act which is an inseparable part of and/or performing an act which is necessary in order to complete the course of conduct constituting and/or fleeing from the immediate scene of eluding an officer.

¶12 While the instruction included all three clauses instead of just one, the record reflects that this was intentional because the trial court believed that the evidence presented at trial supported each of them. The instruction given substantially mirrored the uniform jury instruction OUJI-CR(2d) 4-65 and was not confusing. This proposition is without merit.

2.

¶13 In his second proposition, Newman argues that the trial court erred in failing to instruct the jury, sua sponte, on the lesser offense of second degree felony murder with larceny of an automobile as the underlying felony. "It is settled law that trial courts have a duty to instruct the jury on the salient features of the law raised by the evidence with or without a request." Hogan v. State, 2006 OK CR 19, ¶ 39, 139 P.3d 907, 923 (citing Atterberry v. State, 1986 OK CR 186, ¶ 8, 731 P.2d 420, 422). See also Soriano v. State, 2011 OK CR 9, ¶ 36, 248 P.3d 381, 396. This Court normally reviews a trial court's choice of jury instructions for an abuse of discretion. See Cipriano v. State, 2001 OK CR 25, ¶ 14, 32 P.3d 869, 873. However, because the record does not show that trial counsel either requested these instructions or objected to the trial court's failure to give them our review is for plain error only. See Rutan v. State, 2009 OK CR 3, ¶ 78, 202 P.3d 839, 855. To be entitled to relief for plain error, an appellant must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. "This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." Stewart v. State, 2016 OK CR 9, ¶ 25, 372 P.3d 508, 514.

¶14 It is true that "the trial court must instruct on any lesser included offense warranted by the evidence." Jones v. State, 2006 OK CR 17, ¶ 6, 134 P.3d 150, 154, (citing Shrum v. State, 1999 OK CR 41, ¶¶ 10-12, 991 P.2d 1032, 1036-37) (lesser included instructions should be given if supported by the evidence). An underlying requirement of Shrum, however, is that a lesser offense instruction should not be given unless the evidence would support a conviction for the lesser offense. See Lewallen v. State, 2016 OK CR 4, ¶ 11, 370 P.3d 828, 831. A defendant is entitled to a lesser included offense instruction only when prima facie evidence of the lesser included offense has been presented at trial. See Ball v. State, 2007 OK CR 42, ¶ 32, 173 P.3d 81, 90 (citing Glossip v. State, 2001 OK CR 21, ¶¶ 28-29, 29 P.3d 597, 603-04). "Prima facie evidence of a lesser included offense is that evidence which would allow a jury rationally to find the accused guilty of the lesser offense and acquit him of the greater." Davis v. State, 2018 OK CR 7, ¶ 7, 419 P.3d 271, 277 (quoting Davis, 2011 OK CR 29, ¶ 101, 268 P.3d at 116). The facts recounted above clearly indicate there was no prima facie evidence that would have allowed the jury rationally to find Newman guilty only of larceny of an automobile and acquit him of eluding a police officer. Thus, there was no error, plain or otherwise, in the trial court's failure to instruct the jury on second degree murder with larceny of an automobile as the underlying felony. Relief is not required.

3.

¶15 Newman argues that the introduction of gruesome pictures deprived him of his right to a fair trial and a reliable sentencing. Because none of the photographs at issue were objected to at trial we review for plain error. See Williams v. State, 2008 OK CR 19, ¶ 69, 188 P.3d 208, 223.

¶16 We have noted that gruesome crimes make for gruesome photographs. Cole v. State, 2007 OK CR 27, ¶ 29, 164 P.3d 1089, 1096. This alone, however, will not render them inadmissible as long as they "are not so unnecessarily hideous or repulsive that jurors cannot view them impartially." Bosse v. State, 2017 OK CR 10, ¶ 48, 400 P.3d 834, 853. The test for admissibility of photographs is not whether they are gruesome but whether they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. 12 O.S.2011, §§ 2401, 2402, 2403.

¶17 The photographs at issue in the present case were not particularly gruesome. Some showed the victim before he was removed from his vehicle, some depicted the injuries to his body, and some showed x-rays of his broken bones. These were relevant as they depicted the decedent's injuries and they illustrated and corroborated the medical examiner's testimony. The probative value of these photographs, considered both individually and collectively, was not substantially outweighed by their prejudicial effect and thus their admission into evidence was not error, plain or otherwise.

4.

¶18 Newman argues that error occurred when the State introduced evidence of other uncharged crimes at trial, specifically that after Newman was arrested a pat down search revealed that he possessed a fake black plastic gun which he subsequently tried to destroy with his foot. Newman argues on appeal that this was evidence of an uncharged crime and the trial court erred by allowing its introduction into evidence. Because the evidence he now challenges was not met with objection below, review on appeal is for plain error under the test set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶19 "The basic law is well established - when one is put on trial, one is to be convicted - if at all - by evidence which shows one guilty of the offense charged; and proof that one is guilty of other offenses not connected with that for which one is on trial must be excluded." Lott v. State, 2004 OK CR 27, ¶ 40, 98 P.3d 318, 334. However, "[i]f a defendant's conduct is part of the res gestae of the charged offense, then it is not considered other crimes or bad acts evidence." Vanderpool v. State, 2018 OK CR 39, ¶ 24, 434 P.3d 318, 324 (citing Rogers v. State, 1995 OK CR 8, ¶¶ 20-21, 890 P.2d 959, 971). Evidence is considered part of the res gestae, when: "a) it is so closely connected to the charged offense as to form part of the entire transaction; b) it is necessary to give the jury a complete understanding of the crime; or c) when it is central to the chain of events." Eizember v. State, 2007 OK CR 29, ¶ 77, 164 P.3d 208, 230 (internal quotations omitted). The evidence that Newman was carrying a fake gun at the time he cased the Rush Peterbilt Truck Center while obviously looking for something to steal was central to the chain of events and inextricably intertwined with the evidence that formed the basis of the crime of larceny of an automobile. It was connected to the factual circumstances of this crime and provided contextual information to the jury. Furthermore, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. 12 O.S.2011, § 2403. There was no error, plain or otherwise, in the admission of this evidence.

5.

¶20 Newman contends the crime of eluding an officer is not a constitutionally acceptable predicate offense for first degree felony murder. He argues that because eluding can be committed in some instances as a misdemeanor, it is not the type of inherently dangerous conduct that should serve as the basis for first degree felony murder (deaths occurring during the commission of an enumerated felony). Newman's failure to raise this issue at trial forfeits appellate review of this claim for all but plain error under the test set forth in Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶21 "The matter of defining crimes and fixing the degrees of punishment is one of legislative power." Salyers v. State, 1988 OK CR 88, ¶ 7, 755 P.2d 97, 100. "Arguments concerning the wisdom of the felony murder rule in this state should not be addressed to the Court, since the rule is one of statute." Brogie v. State, 1985 OK CR 2, ¶ 31, 695 P.2d 538, 545. Because Newman's argument is "more about public policy than controlling law, it is better directed to our state legislature." Harris v. State, 2019 OK CR 22, ¶ 93, 450 P.3d 933, 966.

¶22 This case is controlled by the reasoning in Brown v. State, 1987 OK CR 181, ¶ 16, 743 P.2d 133, 138 wherein this Court addressed a similar issue in regard to a jury instruction challenge:

[A]ppellant urges that the trial court erred in refusing to give requested instructions on first degree manslaughter. Appellant's primary argument is that 21 O.S. 1981 § 444 distinguishes between misdemeanor and felony escapes from lawful custody, and because the escape here was at most a misdemeanor, an instruction on misdemeanor-manslaughter under 21 O.S. 1981 § 711 (1) was required. The appellant was charged alternatively with malice aforethought and felony-murder under 21 O.S.Supp.1982 § 701.7 (A) & (B). Section 701.7(B) does not distinguish between misdemeanor and felony escapes from lawful custody, but expressly provides that "[a] person . . . commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of . . . escape from lawful custody. . . ." (emphasis added) The State contends, and we must agree, that the specific felony-murder statute prevails over the general escape from lawful custody statute. See Jones v. State, 507 P.2d 1267, 1270 (Okl.Cr. 1973) (specific statute controls over general statute). Initially, we note that the language of "any felony" which was present in 21 O.S. 1971 § 701 (3) was deleted from our current Section 701.7(B) which was enacted in 1976. Under rules of statutory construction, the foregoing change in language indicates a change in legislative intent. See Irwin v. Irwin, 433 P.2d 931, 934 (Okla. 1965). Statutes are to be construed so as to effectuate their purposes. Owens v. State, 665 P.2d 832, 834 (Okl.Cr. 1983). We believe that the Legislature has expressed a clear and unambiguous intent that Section 701.7(B) was designed to deter escapes from lawful custody because of the inherent danger to law enforcement officers in such situations. In its wisdom, the Legislature has determined that escapes from lawful custody, whether they are denominated misdemeanors or felonies, are fraught with danger to law enforcement officers, as the instant case so tragically demonstrates. The risk of lethal violence is the same, regardless of whether the escape constitutes a felony or a misdemeanor. Therefore, we believe that the clear purpose of Section 701.7(B) would be improperly thwarted by a construction limiting its scope to only felony escapes.

¶23 The Legislature implicitly recognized eluding an officer was an inherently dangerous act that created a foreseeable risk of death when it amended the first degree felony murder statute and added eluding an officer to the list of enumerated crimes in section 701.7(B). This section continues to provide that "[a] person also commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of . . . eluding an officer . . . ." The statute does not distinguish between misdemeanor and felony eluding and construing it as advocated by Newman would thwart the intent of the Legislature. Newman has shown no error and his contention that the crime of eluding an officer is not a constitutionally acceptable predicate offense for first degree felony murder is rejected.

6.

¶24 Newman complains that the cumulative effect of prosecutorial misconduct during the prosecutor's cross-examination of him and in closing argument deprived him of his right to a fair trial. Only a few of the comments at issue were met with objection at trial. We review the comments not objected to below for plain error. See Harney v. State, 2011 OK CR 10, ¶ 23, 256 P.3d 1002, 1007. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶25 "[W]e evaluate the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel." Hanson v. State, 2009 OK CR 13, ¶ 18, 206 P.3d 1020, 1028. Both sides have wide latitude to discuss the evidence and reasonable inferences therefrom. See Harmon v. State, 2011 OK CR 6, ¶ 81, 248 P.3d 918, 943. Relief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair. Jones v. State, 2011 OK CR 13, ¶ 3, 253 P.3d 997, 998. It is the rare instance when a prosecutor's misconduct during closing argument will be found so egregiously detrimental to a defendant's right to a fair trial that reversal is required. See Pryor v. State, 2011 OK CR 18, ¶ 4, 254 P.3d 721, 722.

¶26 Newman first asserts that misconduct occurred when the prosecutor badgered and disparaged him. He complains that the prosecutor disrespected him by calling him by his first name during cross-examination and badgered him by asking him questions that were argumentative or impossible to answer. The record reflects that before the prosecutor called him by his first name he asked Newman if he could do so and Newman acquiesced. In addition, while the prosecutor's cross-examination of Newman was not particularly gentle, it was not required to be. Newman chose to testify and the prosecutor was allowed wide latitude on cross-examination. "[T]he State is permitted to cross-examine the defendant's witnesses at trial concerning any matter which is responsive to testimony given on direct examination or which is material or relevant thereto and which tends to elucidate, modify, explain, contradict or rebut testimony given in chief by the witness." Bench v. State, 2018 OK CR 31, ¶ 141, 431 P.3d 929, 967. The prosecutor's cross-examination of Newman was not improper and there was no error here, plain or otherwise.

¶27 Next, Newman complains that the prosecutor improperly referenced other crimes and bad acts during cross-examination of him and in closing argument. None of the comments at issue were met with objection at trial. Most were not error at all and any which may have bordered upon impropriety certainly did not rise to the level of plain error.

¶28 Finally, Newman argues that in closing argument the prosecutor mischaracterized and misstated the facts and injected personal opinion into the argument. Again, most of these comments were not met with objection at trial. While prosecutors may not misstate the evidence they are allowed to comment upon it and draw logical inferences therefrom. Bench, 2018 OK CR 31, ¶ 137, 431 P.3d at 966. Further, minor misstatements that cannot be found to have affected the trial will not warrant relief. Id. Newman cannot show the existence of an error because the remarks, read in context, are largely based on the evidence and inferences from it. Pullen v. State, 2016 OK CR 18, ¶ 13, 387 P.3d 922, 927. Furthermore, taken in context, the prosecutor did not improperly state his personal opinion of guilt, but permissibly argued that the evidence supported a finding of guilt. See Williams, 2008 OK CR 19, ¶¶ 106-107, 188 P.3d at 228. The argument was not error, plain or otherwise. Relief is not required.

7.

¶29 Newman contends that he was denied constitutionally effective assistance of counsel. This Court reviews claims of ineffective assistance of counsel de novo, to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. Strickland v. Washington, 466 U.S. 668, 687 (1984); Malone v. State, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. Under this test, Newman must affirmatively prove prejudice resulting from his attorney's actions. Strickland, 466 U.S. at 693; Head v. State, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding." Id. Rather, Newman must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. This Court need not determine whether counsel's performance was deficient if the claim can be disposed of on the ground of lack of prejudice. See Malone, 2013 OK CR 1, ¶ 16, 293 P.3d at 207.

Record Based Claims:

¶30 Newman complains that trial counsel was ineffective for failing to: (1) request instructions on second degree felony murder; (2) object to the jury instruction on the definition of "in the commission of" for first degree felony murder; (3) object to prosecutorial misconduct; (4) object to irrelevant and prejudicial photographs; (5) object to evidence of other crimes; and, (6) argue that the evidence was insufficient to support the eluding element of first degree felony murder. The merits of these claims were addressed and rejected above, in Propositions 1, 2, 3, 4, and 6. Newman cannot show on this record that, but for counsel's actions, the result of his trial would have been different. Because he has failed to establish prejudice from his attorney's actions, Newman's ineffective assistance of counsel claim is denied.

Extra-Record Based Claims:

¶31 Because Newman's remaining three ineffective assistance of counsel claims rely on evidence outside the record, we do not reach the merits of these complaints, but only determine whether additional fact-finding regarding them is necessary. Rule 3.11(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020). Newman has filed an application for evidentiary hearing pursuant to Rule 3.11(B). There is a strong presumption of regularity in trial proceedings and counsel's conduct and the application must contain sufficient information to show, by clear and convincing evidence, a strong possibility that trial counsel was ineffective for failing to identify or use the evidence at issue. Rule 3.11(B)(3)(b)(i). Where nothing in the supplemental materials alters or amplifies in any compelling way the portrait that emerged from the evidence and testimony at trial, this Court will find the extrajudicial materials fail to establish by clear and convincing evidence a strong possibility that trial counsel was ineffective. See Sanchez v. State, 2009 OK CR 31, ¶ 104, 223 P.3d 980, 1013.

¶32 Newman first complains that trial counsel was ineffective for failing to present witnesses whose testimony would support his defense that he was no longer eluding the police at the time of the collision. In support of his argument, he attached to his application two newspaper articles in which officials involved made statements about the pursuit. He also asserts that trial counsel was ineffective for putting on a voluntary intoxication defense that was irrelevant to the most serious of the charges against him. He argues that this defense required him to testify when he otherwise would not have done so and this resulted in him unknowingly waiving his right to a bifurcated trial. In support of this claim, Newman attached affidavits from himself and trial counsel.

¶33 Having reviewed Newman's request for an evidentiary hearing to develop this claim and the materials offered to support his request this Court finds that he has failed to meet his burden, as he has not shown by clear and convincing evidence a strong possibility that the outcome of his trial would have been different. Rule 3.11, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2020). Newman is not entitled to an evidentiary hearing to further develop his ineffective assistance of counsel allegations. His motion and this claim are denied. See Simpson v. State, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-06.

8.

¶34 Newman claims that even if no individual error in his case merits relief, the cumulative effect of the errors committed requires a new trial or favorable sentence modification. "The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal." Tafolla v. State, 2019 OK CR 15, ¶ 45, 446 P.3d 1248, 1263. Although individual errors may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial. Id. The commission of several trial errors does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding. Id. There are no errors, considered individually or cumulatively, that merit additional relief in this case. This claim is denied.

DECISION

¶35 The Judgment and Sentence of the district court is AFFIRMED. Appellant's request to supplement the record or in the alternative application for evidentiary hearing on sixth amendment claim is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2020), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, 
THE HONORABLE WILLIAM D. LAFORTUNE,
DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 BRIAN BOEHEIM
 CIERA FREEMAN
 ATTORNEYS AT LAW
 616 SOUTH BOSTON, SUITE 307
 TULSA, OK 74119
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 KATIE BOURASSA
 APPELLATE DEFENSE
 COUNSEL
 OKLAHOMA INDIGENT
 DEFENSE SYSTEM
 P.O. BOX 926
 NORMAN, OK 73070
 COUNSEL FOR APPELLANT

  
 
 
 
 
 JULIE DOSS
 KEVIN KELLER
 ASST. DISTRICT ATTORNEYS
 TULSA COUNTY COURTHOUSE
 500 SOUTH DENVER
 TULSA, OK 74103
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 SHERI M. JOHNSON
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Specially Concur
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur
HUDSON, J.: Concur

LEWIS, PRESIDING JUDGE, SPECIALLY CONCURRING:

¶1 I join in the Court's conclusion that the Legislature is constitutionally authorized to define the killing of a human being in the commission of eluding or attempting to elude an officer as first degree murder. Appellant's premise that this statute authorizes a murder conviction based on the commission of a mere misdemeanor is based on an absurd and illogical construction of the statute in question.

¶2 Section 540(A)(A) of Title 21 defines the essential crime of eluding as increasing the speed of a vehicle or extinguishing its lights "in an attempt to elude such peace officer," after receiving a visual and audible sign from an officer to bring the vehicle to a stop. Eluding in this manner is a misdemeanor. Section 540(A)(B) provides that when the crime of eluding is committed "in such manner as to endanger any other person," the crime is a felony.

¶3 Section 701.7(B) of Title 21 defines as first degree murder, regardless of malice, the taking of human life "during, or if the death of a human being results from . . . the commission or attempted commission of . . . eluding an officer." Consistent with this language, the Court has long recognized the requirement of a logical, causal relationship between the underlying felony and the resulting death. Malaske v. State, 2004 OK CR 18, ¶ 5, 89 P.3d 1116, 1118.

¶4 Just as it was in this case, the taking of a human life during, or as a result of, the commission or attempted commission of the crime of eluding an officer will invariably be a case where the act of eluding endangered another person. The statute punishes the taking of life while committing an inherently dangerous felony as first degree murder, and falls well within the Legislature's general police power to define and punish offenses.

¶5 In the discussion of Proposition Seven, the opinion conveys the impression that the Court might not reach "the merits" of Sixth Amendment claims raised by the Appellant if those claims rely on "evidence outside the record." The text suggests that our analysis of Appellant's motion to supplement the record in connection with these claims under Rule 3.11(B) simply determines "whether additional fact-finding regarding them is necessary."

¶6 A motion to supplement the record with an evidentiary hearing under Rule 3.11(B) is only proper where the Appellant has raised a corresponding claim of ineffective assistance of counsel in the appellate brief. Rule 3.11(B)(3)(b). This Court reviews the motion and supporting extra-record materials in conjunction with that claim to determine whether those materials show "clear and convincing" evidence of a "strong possibility" that trial counsel was ineffective in the manner alleged by the Appellant. Rule 3.11(B)(3)(b)(i).

¶7 Absent this clear and convincing evidence of a strong possibility of both deficient performance and prejudice, we adjudicate Appellant's corresponding claim of ineffective assistance by denying relief, without further supplementing the record. In effect, the Court concludes from its analysis of the corresponding claim and the supporting materials submitted under Rule 3.11(B) that Appellant has not, and probably cannot, establish a Sixth Amendment violation.

¶8 Our resolution of ineffectiveness claims in this way determines more than whether the merits will be reached on direct appeal; it is a final adjudication by the court of last resort. Simpson v. State, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 906 (holding that denial of a request for an evidentiary hearing under Rule 3.11(B) necessarily involves an adverse adjudication of the corresponding ineffective counsel claim under the more rigorous Strickland standard); State v. Blevins, 1992 OK CR 4, ¶ 2, 825 P.2d 270, 271.

¶9 I am authorized to state that Vice Presiding Judge Kuehn joins in this separate opinion specially concurring.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 88, 755 P.2d 97, SALYERS v. STATE
Discussed
 1992 OK CR 4, 825 P.2d 270, STATE v. BLEVINS
Discussed
 1995 OK CR 8, 890 P.2d 959, ROGERS v. STATE
Discussed
 2001 OK CR 21, 29 P.3d 597, 72 OBJ 2146, GLOSSIP v. STATE
Discussed
 2001 OK CR 25, 32 P.3d 869, 72 OBJ 2629, CIPRIANO v. STATE
Discussed
 1999 OK CR 41, 991 P.2d 1032, Shrum v. State
Discussed
 2002 OK CR 16, 45 P.3d 907, MATTHEWS v. STATE
Discussed
 2004 OK CR 18, 89 P.3d 1116, MALASKE v. STATE
Discussed
 2004 OK CR 27, 98 P.3d 318, LOTT v. STATE
Discussed
 2004 OK CR 36, 103 P.3d 70, DAVIS v. STATE
Discussed
 2006 OK CR 17, 134 P.3d 150, JONES v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed at Length
 2006 OK CR 34, 142 P.3d 437, CODDINGTON v. STATE
Discussed
 2006 OK CR 44, 146 P.3d 1141, HEAD v. STATE
Discussed
 2007 OK CR 27, 164 P.3d 1089, COLE v. STATE
Discussed
 2007 OK CR 29, 164 P.3d 208, EIZEMBER v. STATE
Discussed
 2007 OK CR 42, 173 P.3d 81, BALL v. STATE
Discussed
 2008 OK CR 19, 188 P.3d 208, WILLIAMS v. STATE
Discussed at Length
 2009 OK CR 3, 202 P.3d 839, RUTAN v. STATE
Discussed
 2009 OK CR 13, 206 P.3d 1020, HANSON v. STATE
Discussed
 2009 OK CR 31, 223 P.3d 980, SANCHEZ v. STATE
Discussed
 2010 OK CR 6, 230 P.3d 888, SIMPSON v. STATE
Discussed at Length
 2010 OK CR 7, 231 P.3d 1156, LOGSDON v. STATE
Discussed
 2011 OK CR 6, 248 P.3d 918, HARMON v. STATE
Discussed
 2011 OK CR 10, 256 P.3d 1002, HARNEY v. STATE
Discussed
 2011 OK CR 9, 248 P.3d 381, SORIANO v. STATE
Discussed
 2011 OK CR 13, 253 P.3d 997, JONES v. STATE
Discussed
 2011 OK CR 18, 254 P.3d 721, PRYOR v. STATE
Discussed
 2011 OK CR 29, 268 P.3d 86, DAVIS v. STATE
Discussed at Length
 2013 OK CR 1, 293 P.3d 198, MALONE v. STATE
Discussed at Length
 2013 OK CR 8, 303 P.3d 291, DAY v. STATE
Discussed
 2016 OK CR 4, 370 P.3d 828, LEWALLEN v. STATE
Discussed
 2016 OK CR 9, 372 P.3d 508, STEWART v. STATE
Discussed
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Discussed
 2017 OK CR 10, 400 P.3d 834, BOSSE v. STATE
Discussed
 2018 OK CR 7, 419 P.3d 271, DAVIS v. STATE
Discussed
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed at Length
 2018 OK CR 39, 434 P.3d 318, VANDERPOOL v. STATE
Discussed
 2019 OK CR 15, 446 P.3d 1248, TAFOLLA v. STATE
Discussed
 2019 OK CR 22, 450 P.3d 933, HARRIS v. STATE
Discussed
 1983 OK CR 85, 665 P.2d 832, OWENS v. STATE
Cited
 1973 OK CR 118, 507 P.2d 1267, JONES v. STATE
Cited
 1985 OK CR 2, 695 P.2d 538, BROGIE v. STATE
Discussed
 1985 OK CR 132, 709 P.2d 202, SPUEHLER v. STATE
Discussed
 1986 OK CR 186, 731 P.2d 420, ATTERBERRY v. STATE
Discussed
 1987 OK CR 181, 743 P.2d 133, BROWN v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1965 OK 145, 433 P.2d 931, IRWIN v. IRWIN
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2401, Relevant Evidence Defined
Cited
 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701, Repealed
Cited
 21 O.S. 444, Escape or Attempt to Escape From Arrest or Detention - Electronic Monitoring Devices
Cited
 21 O.S. 540, Obstruction of Public Officer - Recording the Activity of an Officer in a Public Area
Cited
 21 O.S. 645, Assault, Battery, or Assault and Battery with Dangerous Weapon
Cited
 21 O.S. 701.7, Murder in the First Degree
Discussed
 21 O.S. 711, First Degree Manslaughter
Cited
 21 O.S. 1720, Theft of Aircraft, Automobile, Automotive Driven Vehicle, or Construction or Farm Equipment
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 6-303, Driving While License Under Suspension or Revocation - Penalties - Motorcycles
Cited
 47 O.S. 10-102, Accidents Resulting in Nonfatal Injury - Failure to Stop
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA